UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

BOYD GILMORE,

      Plaintiff,

v.                                    Case No. 2:08-cv-00326

THE HONORABLE JUDGE LOUIS H. BLOOM,
Kanawha County Circuit Court,
REBECCA BOSTIC, Kanawha County Adult
Probation Department, West Virginia Board
of Probation and Parole,

Huttonsville Correctional Center Defendants:
WILLIAM HAINES, Warden,
TERESA WAID, Deputy Warden,
DEBRA COTTRELL, Classification Director,
KENNETH AKINS, Case Manager and Classification Committee Chair,
KAREN TETER, Records Department,

St. Mary's Correctional Center Defendants:
WILLIAM FOX, Warden,
MISTY ADAMS, Case Supervisor,
DAN KIMBLE, Original Classification Director,
ROBERT PARKER, Unit Manager,
RUSSELL MASTON, Records Supervisor,
KAROL PAYNE, Unit Manager and Later Classification Director,
JOYCE BILLS, Institutional Parole Officer,

Mount Olive Correctional Complex Defendants:
DAVID BALLARD, Warden,
TOM SUMMERRELL, Case Supervisor and Classification Committee Chair,
JANET PAYNE, Unit Manager,
LEE HARPER, Case Manager,
PAUL LYTTLE, Associate Warden of Programs,
DOROTHY KERR, Classification Chair,
LORI BURFORD, Records Supervisor,

Division of Corrections Defendants:
JIM RUBENSTEIN, Commissioner,
STEVE YARDLY, Deputy Commissioner,
CHARLENE SOTAK, Inmate Grievance Coordinator,

**Correctional Medical Services Defendants at Mount Olive:**
**CHERYL SNYDER, Administrator of Mental Health,**
**CRISTY FLORES, MHU, Licensed Social Worker,**
**TIM CARPER, MHU, Licensed Social Worker,**
**CORRECTIONAL MEDICAL SERVICES, also known as CMS Corporation,**
**Custodian of Records for Medical and Mental Health Unit Records,**
**and**

**WEST VIRGINIA PAROLE BOARD,**

        **Defendants.**


                    <u>**PROPOSED FINDINGS AND RECOMMENDATIONS**</u>

        Plaintiff, Boyd Gilmore, proceeding *pro se*, filed this action on May 20, 2008 (signed May 11, 2008), in which he seeks injunctive, declaratory, and compensatory relief based on his assertion that his constitutional rights have been and are being violated by the defendants in connection with allegedly false information which is in his presentence report and prison file. He contends that his right to due process of law has been violated, and the false information has resulted in erroneous classification, denial of parole, and physical and emotional injury. In a nutshell, although Plaintiff pled guilty to and was sentenced for the offense of burglary (sentenced July 29, 2005, Kanawha County), he has been classified at a higher level than he believes to be appropriate, designated as a "sex offender," and required to participate in sex offender treatment; his refusal to participate has resulted in various consequences, particularly denial of parole.

                                    2

At this stage of the proceedings, the allegations in the Amended Complaint are taken as true.  Moreover, because Plaintiff is a *pro se* litigant, his pleadings are liberally construed. Haines v. Kerner, 404 U.S. 519 (1972).

**Motion to Dismiss (# 36) by Correctional Medical Services**
**Second Motion to Dismiss (# 49) by Correctional Medical Services**

Defendant Correctional Medical Services ("CMS") has filed two motions to dismiss, neither of which is accompanied by a memorandum, as required by LR Civ P 7.1(a).  Accordingly, it is respectfully **RECOMMENDED** that both motions be denied without prejudice as set forth in the Local Rule.

**Motion to Dismiss (# 51) by Prison and Parole Defendants**
**Amended Motion to Dismiss (# 57) by Prison and Parole Defendants**

These motions were filed on behalf of the Huttonsville Correctional Center defendants, the St. Mary's Correctional Center defendants, the Mount Olive Correctional Complex defendants, the Division of Corrections defendants, and the West Virginia Parole Board (collectively "the Prison and Parole Defendants" or "PPD").

The differences between these two motions are that defendant Joyce Bills was added to the text of the Amended Motion and to the signature block, and the spelling of defendant Akins' name was corrected.  The court will address only the Amended Motion to Dismiss.

The Amended Motion is supported by exhibits and a memorandum (# 58); Plaintiff has filed a Response (# 77); the PPD filed a

3

reply (# 83).  The Amended Motion raises seven arguments: Eleventh Amendment immunity; absolute judicial immunity; lack of authority to expunge or correct presentence report information; lack of a constitutionally protected liberty interest in refusing to participate in sex offender treatment; correct classification; failure to exhaust administrative remedies; lack of physical injury.

Eleventh Amendment

Plaintiff's original complaint asserted that Plaintiff sought recovery for money damages from the Division of Corrections and the Parole Board "as entities, and no recovery will be sought from their employees individually." (Complaint, # 3, ¶ 89, at 27.)  The PPD assert that, as State employees, they are immune from liability for money damages for actions taken in their official capacities. (Mem., # 58, at 6-11.)  Plaintiff then filed a motion for leave to file an amended complaint, which was granted by Order entered October 29, 2008 (# 99).  The Amended Complaint adds allegations that each defendant is sued in his/her official and individual capacities (# 100).

The Supreme Court, reading 42 U.S.C. § 1983 in conjunction with the Eleventh Amendment, ruled in <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989), that except for injunctive relief, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  A state official sued in

his individual capacity is not protected by the Eleventh Amendment and is a "person" under § 1983.  Hafer v. Melo, 502 U.S. 21, 31 (1991).

The undersigned proposes that the presiding District Judge **FIND** that the PPD in their official capacities with respect to compensatory relief are not "persons" under § 1983.

Judicial Immunity of West Virginia Parole Board

Plaintiff's Amended Complaint states that the members of the West Virginia Parole Board are State employees and are sued in their individual and official capacity.  (Amended Complaint, # 100, at 9.)  The undersigned has addressed their official capacity above.

The West Virginia Parole Board contends that it is absolutely immune from liability based on quasi-judicial immunity.  (Mem., # 58, at 11-13.)  It is well-established that state parole board members have quasi-judicial immunity in considering parole applications.  Pope v. Chew, 521 F.2d 400 (4th Cir. 1975).; Parkulo v. West Virginia Bd. of Probation and Parole, 483 S.E.2d 507, 525 (W. Va. 1996) ("we cannot conceive of legitimate actions by the Parole Board, as a governmental entity, which are not within its quasi-judicial nature").

The undersigned proposes that the presiding District Judge **FIND** that the West Virginia Parole Board, as a quasi-judicial entity, is entitled to absolute judicial immunity from liability

5

and should be dismissed with prejudice.

Lack of Authority to Expunge or Correct Presentence Information

The crux of this case is Plaintiff's relentless efforts to have certain information deleted from the presentence investigation report ("PSI") which was prepared in connection with his prosecution in the Circuit Court of Kanawha County, West Virginia. Plaintiff filed the PSI and related documents as Exhibits C, D and E to his original complaint.  Out of an abundance of caution, by Order entered May 22, 2008 (# 12), Exhibits C, D and E were filed under seal to protect Plaintiff's Social Security Number and the names of minor children.  Defendant Bostic (the probation officer who authored the PSI) filed the PSI and related documents as Exhibits B-E to her motion to dismiss (# 73-2), with the appropriate redactions; thus the text of the documents are available on the public record.

The offense of conviction was burglary, based upon events which occurred on August 26, 2002.  The PSI states that Plaintiff

> used a screwdriver to gain entry to the rear sliding glass door of the home belonging to Kimberly Baire Gilmore, Subject's estranged wife.  The Kanawha County Sheriff's Department was sent to this residence as a hang up call had been received at Metro at this residence. Upon their arrival the police knocked at the door and a very upset female, later identified as Kimberly Baire Gilmore, ran out into the yard stating her estranged husband, Boyd Gilmore, had entered the residence through the rear glass door, and she had been awakened by his entry.  She reported Gilmore then proceeded to tackle her in the hallway outside the master bedroom and that the impact of this knocked her back into the bedroom on her back where he proceeded to shock her with what was later

6

described and determined to be a stun gun. * * * A search of the residence was conducted and several articles were recovered, namely a 200,000 volt stun gun, found underneath the mattress in the master bedroom, wire ties, a black stocking mask, a Craftsman brand screwdriver recovered from the kitchen table and believed to be the instrument that opened the sliding glass door. Mrs. Gilmore briefly told the deputies that Gilmore had threatened her life and she had been held in the bedroom prior to their arrival and that Gilmore was prepared to kill her and go to jail due to the problems they were having in their marriage and the amount of child support he was to pay. All items that Mrs. Gilmore alleged Mr. Gilmore had with him inside the residence were recovered with the exception of a rubber surgical glove. The Sheriff's Department has since recovered the glove.

(# 73-2, Ex. B, ¶ 3, at 1.)

The specific information at issue is the following text in the PSI:

27. * * * Gilmore admitted he first met Kimberly Baire at her age of twelve, counseling her professionally, but at some point by age fifteen to age eighteen, they became intimate. She later filed a complaint to the counseling board and Gilmore relinquished his license. He and the victim's relationship also involved her employment by Gilmore, reportedly showing rental property for possible occupancy. She became pregnant and they married prior to their first child's birth, and were married about one year. They divorced and remarried after a few years where she had meanwhile had four more children, all fathered by Gilmore. * * * Gilmore described Kimberly as "killing my counseling license after she filed a complaint with all of this (current offense) this legal stuff and why I'm here today. She harassed my partner, Dr. Robert Clark, so much that he pulled out of my practice." He participated in their relationship however appears he shifts all blame to the victim for his loosing [sic] his license. He violated her trust and acted unethically in their relationship.

* * *

36. * * * The victim provided a document for the court's review that allege Gilmore obtained a fraudulent birth

> certificate for her, in order to make her one year older,
> obtaining it about the time they were married the first
> time. * * *

(# 73-2, Ex. B, at 6, 8.)

When the PSI was prepared, Plaintiff and his attorneys, Peter

A. Hendricks and Thomas W. Smith, had the opportunity to review the

PSI and offer comments and corrections, which they did.   The

comments are found at Exhibits C1, C2, and D to the original

complaint, and Exhibits C and D to the instant motion.   Exhibit E

to the original complaint and to the instant motion is Ms. Bostic's

response to the comments.   Exhibit E clarifies ¶¶ 27 and 36 as

follows:

> As to paragraph 27, further into said paragraph
> regarding the timing of intimacy between Gilmore and the
> victim, Gilmore stated that he did not become intimate
> with the victim until she was not his counseling client,
> she, the victim, alleged they were intimate prior to her
> eighteen[th] birthday and was still his counseling
> client.  *The actual timing of their relationship is
> unknown.*  The victim later filed a complaint to the
> counseling board of allegations of inappropriate contact.
> Gilmore relinquished his license without an evidentiary
> hearing.  *It appears that the victim and the defendant
> have a difference of opinion about when the
> "inappropriate relationship" began.*
>
> * * *
>
> Regarding the victim's claim that Gilmore obtained
> a fraudulent birth certificate for her, it is noted in
> this exception letter that he denies this.  The victim
> submitted a copy of said certificate to the court for
> review.

(# 4-3, Ex. E, at 25-26.) [Emphasis added.]

The PSI and the comments were addressed at the sentencing hearing on July 27, 2005, before the Hon. Louis H. Bloom of the Circuit Court of Kanawha County, the transcript of which is found at Exhibit 1 to Plaintiff's Response to the PPD's Amended Motion to Dismiss (# 77).  Plaintiff had been on bond for three years.  The plea agreement provided that the State would recommend home confinement.  (# 77, Ex. 1, at 3.)

At the sentencing hearing, the victim, Kimberly Lynn Baire Harris, testified that "[t]he incident that occurred on August 26th, 2002 was a culmination of 13 years of physical, mental and verbal abuse I suffered at the hands of Boyd Gilmore dating back to 1990 when I was only 15 years old and he was 28 years old."  <u>Id.</u>, at 12.  Plaintiff's attorneys did not cross-examine the victim.  During the hearing, Judge Bloom stated that he would assume that Plaintiff was current, or ahead, on child support payments, <u>id.</u>, at 7, and that he would not consider a note from Plaintiff's son, <u>id.</u>, at 8.  The judge then stated, "I have had the opportunity to carefully review all the information that's been provided by your attorneys, the Probation Department and have advised you of certain items that I'm not going to consider that were contained in the pre-sentence investigation, as we've discussed here today."  <u>Id.</u>, at 15-16.  He found incarceration to be the appropriate sentence, "given the nature of this crime, and the history between these folks would warrant."  <u>Id.</u>, at 16.  He imposed a 1-to-15 year

sentence.  <u>Id.</u>

Plaintiff has also attempted to challenge the information in the PSI in two actions filed as petitions for a writ of habeas corpus, which are discussed in Exhibit 3 to the PPD's amended motion to dismiss (# 57).  Both were summarily dismissed.  <u>Id.</u>

Plaintiff tried to file an action against Probation Officer Rebecca Bostic in the Circuit Court of Marshall County, West Virginia, which was dismissed without having been filed. (Complaint, # 4-2, Ex. B.)

The PPD contend that they have no authority to expunge or purge a PSI, and that Plaintiff's action should be dismissed for failure to state a claim upon which relief can be granted.  (Mem., # 58, at 13-16.)  Plaintiff has not refuted this contention.  A PSI is a report prepared by a probation officer to assist a sentencing judge in determining an appropriate sentence.  Plaintiff had adequate notice and ample opportunity to challenge the information in his PSI, as is demonstrated by the exhibits provided by Plaintiff and the PPD.  Judge Bloom reviewed "all" the information submitted (with two enumerated exceptions), and imposed sentence. Subsequently, Judge Bloom ruled that "the Presentence Report did not prejudice the Court, in any way, as the Court had, prior to sentencing, carefully reviewed Gilmore's objections to the information in the report."  (# 57-3, Ex. 3, at 4.)

It appears to the court that Plaintiff is claiming that both his PSI and his prison files are inaccurate to the extent that they are being used by the PPD as proof that Plaintiff had sex with a minor.  To the extent that Plaintiff's claim is that the PPD have a duty to correct allegedly false information in a PSI, the undersigned proposes that the presiding District Judge **FIND** that the Plaintiff has failed to state a claim upon which relief can be granted, as the PPD have no such duty and lack the authority to do so.

In Paine v. Baker, 595 F.2d 197, 201 (4th Cir. 1979), the Fourth Circuit held "that in certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied on to a constitutionally significant degree."  The Fifth Circuit has opined that Paine is no longer good law, citing Hill v. Jackson, 64 F.3d 163 (4th Cir. 1995), as an example of cases which undercut Paine.  Johnson v. Rodriquez, 110 F.3d 299, 309 n.13 (5th Cir. 1997).  The undersigned is not so confident that Paine has been effectively overruled.  The Hill case arose in Virginia, where the parole statute does not establish a liberty interest.  Accordingly, the undersigned will apply Paine because West Virginia's parole statute does establish a liberty interest, as held in Tasker v. Mohn, 267 S.E.2d 183 (W. Va. 1980).

Based on Paine v. Baker, the undersigned proposes that the

presiding District Judge further **FIND** that Plaintiff has stated a claim of constitutional magnitude because Plaintiff alleges that false information is in his prison file and it is relied on to a constitutionally significant degree, that is, he alleges that he is being denied parole because of the false information.

Participation in a Prison's Sexual Offender Treatment Program

The PPD concede that "Plaintiff is being denied parole because of his refusal to participate in the level one educational" sexual offender treatment program, even though he was not convicted of a sexual offense. (Mem., # 58, at 24.) They contend that Plaintiff

> has no constitutionally protected liberty interest in being free from participation in a prison's sexual offender treatment program where evidence of a hidden sexual offense was brought to light through the Pre-Sentence Investigation Report and since the legitimate penological interest of the State in attempting to rehabilitate prisoners far outweighs any interest that the Plaintiff has in wishing to refuse programming.

Id., at 26.

This issue appears to be one of first impression in any federal court within the States comprising the Fourth Circuit. The undersigned has reviewed numerous published and unpublished decisions on the matter; at least four United States Courts of Appeals have published decisions, none of which was cited by the PPD.

In Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997), the Ninth Circuit addressed an inmate who was charged with violent sexual offenses, but was convicted of non-sexual crimes. The inmate

12

challenged being labeled as a "sex offender" and assigned to the Sex Offender Treatment Program (in which he refused to participate).   The Ninth Circuit equated the "sex offender" label to the "mentally ill" label addressed by the Supreme Court in <u>Vitek v. Jones</u>, 445 U.S. 480 (1980).   In <u>Vitek</u>, the Court held:

> Were an ordinary citizen to be subjected involuntarily to these consequences [the labeling as mentally ill and the transfer to a mental hospital], it is undeniable that protected liberty interests would be unconstitutionally infringed absent compliance with the procedures required by the Due Process Clause.   We conclude that a convicted felon also is entitled to the benefits of procedures appropriate in the circumstances before he is found to have a mental disease and transferred to a mental hospital.

445 U.S. at 492-93.   The Ninth Circuit remarked that they could "hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender."   <u>Neal</u>, 131 F.3d at 829.

> The liberty interest at stake in this case is similar in form and scope to the interest at stake in <u>Vitek</u>: the stigmatizing consequences of the attachment of the "sex offender" label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections.

<u>Id.</u>, at 830.

Having concluded that inmate Neal's liberty interest was at stake, the Ninth Circuit concluded that the minimum due process protections required under <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), were necessary.   That is, "[d]ue process requires that the inmate

be notified [in advance] of the reasons for his classification as a sex offender without the inmate's having to request that information," and "a hearing at which he must be allowed to call witnesses and present documentary evidence in his defense." Id., at 830-31.

In Kirby v. Siegelman, 195 F.3d 1285 (11th Cir. 1999), the Eleventh Circuit consolidated the cases of two Alabama inmates, one of whom, Robert Edmond, was convicted of attempted murder. Edmond was classified as a sex offender, pursuant to the Alabama regulations, based on a prior arrest for rape (no billed by the grand jury), and a prior charge of sexual abuse (*nolle prossed* in the trial court). Relying on the analysis set forth in Vitek and Neal, the Circuit Court held that "[a]n inmate who has never been convicted of a sex crime is entitled to due process before the state declares him to be a sex offender." 195 F.3d at 1292.

Similarly, in Chambers v. Colorado Dep't of Corrections, 205 F.3d 1237, 1243 (10th Cir. 2000), the Tenth Circuit concluded that the Colorado Department of Corrections ("CDOC") provided the inmate "a liberty interest in the consequences of the *mandatory* label [of sex offender]," for which some process is due. The court entered an injunction preventing the CDOC from withholding earned time credit because Chambers refused to admit to being a sex offender. Id., at 1244. In a subsequent decision, Gwinn v. Awmiller, 354 F.3d 1211, 1217 (10th Cir. 2004), the Tenth Circuit explained the

14

Chambers decision as follows:

> Mr. Chambers had thus established that (1) CDOC officials
> had made a statement about him or her that was
> sufficiently derogatory to injure his or her reputation,
> that was capable of being proved false, and that he
> asserted was false, and that (2) he had experienced some
> governmentally imposed burden that "significantly altered
> [his or] her status as a matter of state law." Paul [v.
> Davis,] 424 U.S. [693,] at 710-11, 96 S. Ct. 1155
> [(1976)].

Mr. Gwinn was accorded a hearing consistent with the procedural requirements of Wolff v. McDonnell, 418 U.S. 539 (1974): notice of the charges, an opportunity to present witnesses and evidence in defense of those charges, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Id., at 1219.

In Coleman v. Dretke, 395 F.3d 216 (5th Cir. 2004), the Fifth Circuit addressed the issue in the context of habeas corpus in a case involving a person whose parole was revoked because of his failure to enroll or participate in sex offender therapy. The sex offender therapy requirement had been imposed by the parole panel without advance notice or the opportunity for a hearing in which to contest the imposition of the condition. The Fifth Circuit held that "the Due Process Clause, as interpreted in Vitek, provides Coleman with a liberty interest in freedom from the stigma and compelled treatment on which his parole was conditioned, and the state was required to provide procedural protections before imposing such conditions." 395 F.3d at 223.

15

It being well-settled that West Virginia law gives prisoners a liberty interest in parole, then it follows that West Virginia cannot deprive a prisoner of parole by labeling him a sex offender when he was not convicted of a sex offense, without providing him the process which is due.  In Wilkinson v. Dotson, 544 U.S. 74, 84 (2005), the Supreme Court ruled that an inmate may initiate a § 1983 action to seek invalidation of "state procedures used to deny parole eligibility and parole suitability," but he may not seek the relief of immediate or early release, which is available only through a writ of habeas corpus.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has stated a claim upon which relief can be granted based on his constitutionally protected liberty interest in not being classified as a "sex offender" and in not being required to undergo sex offender treatment, without due process of law, because he was not convicted of a sex offense.  The presiding District Judge should further **FIND** that Plaintiff has stated a claim upon which relief can be granted with respect to his contention that his right to due process of law was violated when he was not given those procedural rights set forth in Tasker and Wolff v. McDonnell in connection with his purported sex offender status.

Correctness of Classification

The PPD argue that Plaintiff is correctly classified, and cite

16

to Exhibits 9 and 10 (## 57-5 and 57-6) in support.  In other words, the PPD are contending that this claim should be dismissed with prejudice as finally adjudicated.  Such an assertion is inappropriate in the context of a motion to dismiss.  Moreover, Exhibit 10, Warden Haines' denial of Plaintiff's appeal of his classification, refers to the need for Plaintiff to undergo "programming."  This word is unexplained, and appears to refer to sex offender treatment.

The undersigned proposes that the presiding District Judge **FIND** that the PPD have not made an argument concerning Plaintiff's classification which is able to be addressed on a motion to dismiss.

<u>Exhaustion of Remedies</u>

The PPD assert that Plaintiff failed to exhaust his remedies concerning his classification and sex offender status at St. Mary's Correctional Center and at Mount Olive Correctional Complex, and concede that he exhausted his remedies at Huttonsville Correctional Center.  (Reply, # 83, at 8.)  The exhaustion requirement for classification is fulfilled by a single step: appeal to the warden. (Mem., # 58, at 29.)

Plaintiff argues that he was denied access to the grievance procedure at Huttonsville and St. Mary's, and that exhaustion is not required by 42 U.S.C. § 1982.  (Response, # 77, at 9.) Plaintiff submitted exhibits to his original complaint which appear

17

to indicate that he did exhaust at least some of his remedies. Exhibit I (# 4-4) is a August 14, 2006 denial of his classification appeal by St. Mary's warden, William M. Fox. Exhibit S is a May 2, 2008 grievance, filed by Plaintiff at Mount Olive. Throughout the exhibits are repeated efforts by Plaintiff to litigate the circumstances of his underlying offense in order to disprove that he engaged in conduct which would categorize him as a sex offender.

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("the PLRA") states that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prison conditions" means " . . . conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings." 18 U.S.C. § 3626(g)(2). A "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

In Booth v. Churner, 532 U.S. 731 (2001), the Supreme Court of the United States held that exhaustion of administrative remedies

18

is mandatory, regardless of the type of relief sought or offered through the administrative procedures.  Id. at 741.  In Booth, the Court required exhaustion even where the grievance process does not permit the award of money damages, and the prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action.  Id.

In Porter v. Nussle, 534 U.S. 516, 531 (2002), the Court held "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they alleges excessive force or other some wrong."  Not only must a prisoner exhaust his administrative remedies, but he must also do so properly.  Proper exhaustion "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits.'"  Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2385 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002). [Emphasis in the original.]) That is, a prisoner must complete the administrative process in accordance with the applicable procedural rules of the process, including the deadlines.

The Court ruled in Jones v. Bock, 127 S. Ct. 910, 921 (2007), that an inmate's failure to exhaust remedies under the PLRA is an affirmative defense; the inmate need not demonstrate in his complaint that he has exhausted applicable remedies.  Jones also

19

held that an inmate does not automatically fail to exhaust when the inmate sues one or more defendants not named in the pertinent grievances. Id., at 923. If a complaint contains claims, some of which have been exhausted, and some of which have not been exhausted, the entire complaint is not dismissed; the court proceeds only on the exhausted claims. Id., at 924-26.

Under the circumstances, the court is unable to determine whether Plaintiff exhausted his remedies as to each and every classification decision. Moreover, there is a question as to whether an inmate must repeatedly appeal a decision that is the same as a prior decision which was appealed. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the PPD have not supplied sufficient exhibits or affidavits to support their argument of failure to exhaust.

Lack of Physical Injury

Plaintiff's original complaint alleges that he "sustained multiple injuries on both July 2, 2006 and July 13, 2007, when he was denied parole" based on the allegedly false information, and that he "suffered and continues to suffer extreme emotional distress." (# 3, ¶ 67, at 20.) He also asserts that he has "suffered further pain and mental anguish." Id., ¶ 71, at 21. His Amended Complaint alleges that Plaintiff suffers stomach and lower intestinal problems, headaches, cold sweats, rashes, nightmares, vomiting, and teeth grinding. (# 100, at 31.)

20

It remains to be seen whether the physical manifestations which Plaintiff attributes to being classified as a sex offender were in fact causally related to that designation. At this point, his allegations are taken as true, and the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has stated a claim which meets the requirements of 42 U.S.C. § 1997e(e).

### Motion to Dismiss (# 72) by the Hon. Louis H. Bloom<br>Renewed Motion to Dismiss (# 101) by defendant Bloom

These motions to dismiss are based on absolute judicial immunity, as all allegations against Judge Bloom arise out of the exercise of his duties and authority as the judge of the Circuit Court of Kanawha County who presided over Plaintiff's criminal case. Defendant Bloom also raises the pre-suit notice requirement of West Virginia Code § 55-17-3(a)(1). (Mem., # 80.)

Plaintiff's Response (# 84) argues that Judge Bloom failed in his judicial duties and violated the canons of judicial conduct. He contends that judicial immunity is not a bar to prospective injunctive relief, citing Pulliam v. Allen, 466 U.S. 522 (1984). Finally, he argues that W. Va. Code § 55-17-3(a)(1) does not apply to federal causes of action.

Defendant Bloom's Reply (# 88) reiterates his arguments, and notes that all of Plaintiff's complaints against him relate to past conduct, not future actions. His renewed motion to dismiss (# 101) incorporates these arguments with respect to the amended complaint.

21

It is firmly settled that judges are immune from liability for damages for acts committed within their judicial jurisdiction, even when the judge is accused of acting maliciously and corruptly. <u>Pierson v. Ray</u>, 386 U.S. 547, 554 (1967).

> It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decisionmaking but to intimidation.
>
> We do not believe that this settled principle of law was abolished by § 1983, which makes liable "every person" who under color of law deprives another person of his civil rights. The legislative record gives no clear indication that Congress meant to abolish wholesale all common-law immunities.

<u>Id.</u>

Due to the clear and unequivocal application of absolute judicial immunity, it is not necessary to address the applicability of W. Va. Code § 55-17-3(a)(1).

The undersigned proposes that the presiding District Judge **FIND** that the Hon. Louis H. Bloom is entitled to absolute judicial immunity.

### Motion to Dismiss (# 73) by Rebecca Bostic

Defendant Rebecca Bostic is the probation officer who prepared the PSI concerning Plaintiff. Her motion to dismiss appropriately relies upon <u>Gant v. United States Probation Office</u>, 994 F. Supp. 729, 733 (S.D. W. Va. 1998), which states, "[o]ne function for

which probation officers uniformly have been granted absolute immunity is the preparation of presentence reports." No further analysis should be necessary.

The undersigned proposes that the presiding District Judge **FIND** that Rebecca Bostic is entitled to absolute immunity.

### RECOMMENDATIONS

It is respectfully **RECOMMENDED** <u>with respect to the original complaint as amended and supplemented by document # 100</u> as follows:

1. The motions to dismiss (## 36 and 49) filed by Correctional Medical Services be denied without prejudice;

2. The motion to dismiss (# 51) filed by the Prison and Parole Defendants be denied as moot;

3. The amended motion to dismiss (# 57) filed by the Prison and Parole Defendants be granted as to the Prison and Parole Defendants in their official capacity as to money damages only but not as to possible injunctive relief, be granted as to the West Virginia Parole Board based on quasi-judicial immunity, be granted as to the Prison and Parole Defendants with respect to expunging or correcting the PSI, and otherwise denied;

4. The motion to dismiss (# 72) filed by the Hon. Louis H. Bloom be denied as moot;

5. The renewed motion to dismiss (# 101) filed by the Hon. Louis H. Bloom be granted; and

6. The motion to dismiss (# 73) filed by Rebecca Bostic be

23

granted.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and three days (service/mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Judge Copenhaver and this Magistrate Judge.

24

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff and counsel of record.

_November 7, 2008_
         Date

*Mary E. Stanley*

Mary E. Stanley
United States Magistrate Judge