UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION


BOYD GILMORE,

          Plaintiff,

v.                                    CIVIL ACTION NO: 2:08-cv-326

REBECCA BOSTIC, Kanawha County Adult
Probation Department, West Virginia
Board of Probation and Parole,

Huttonsville Correctional Center Defendants:
WILLIAM HAINES, Warden,
TERESA WAID, Deputy Warden,
DEBRA COTTRELL, Classification Director,
KENNETH AKINS, Case Manager and
Classification Committee Chair,
KAREN TETER, Records Department,

St. Mary's Correctional Center Defendants:
WILLIAM FOX, Warden,
MISTY ADAMS, Case Supervisor,
DAN KIMBLE, Original Classification Director,
ROBERT PARKER, Unit Manager,
RUSSELL MASTON, Records Supervisor,
KAROL PAYNE, Unit Manager and Later
Classification Director,
JOYCE BILLS, Institutional Parole Officer,

Mount Olive Correctional Complex Defendants:
DAVID BALLARD, Warden,
TOM SUMMERRELL, Case Supervisor and
Classification Committee Chair,
JANET PAYNE, Unit Manager,
LEE HARPER, Case Manager,
PAUL LYTTLE, Associate Warden of Programs,
DOROTHY KERR, Classification Chair,
LORI BURFORD, Records Supervisor,

Division of Corrections Defendants:
JIM RUBENSTEIN, Commissioner,
STEVE YARDLY, Deputy Commissioner,
CHARLENE SOTAK, Inmate Grievance Coordinator,

Correctional Medical Services Defendants at Mount Olive:
CHERYL SNYDER, Administrator of Mental Health,
CRISTY FLORES, MHU, Licensed Social Worker,
TIM CARPER, MHU, Licensed Social Worker,
CORRECTIONAL MEDICAL SERVICES,
also known as CMS Corporation,
Custodian of Records for Medical and
Mental Health Unit Records, and

WEST VIRGINIA PAROLE BOARD,

        Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>


        This action was previously referred to Mary E. Stanley,
United States Magistrate Judge, who has submitted her Proposed
Findings and Recommendation ("PF&R") pursuant to the provisions
of 28 U.S.C. § 636(b)(1)(B) on November 7, 2008.

        As noted by the magistrate judge in her PF&R, the
plaintiff claims that although he pled guilty to and was
sentenced for the offense of burglary, he has not only been
classified in the West Virginia penal system at a higher level
than he believes to be appropriate but he has been designated as
a "sex offender" and required to participate in sex offender
treatment.  His refusal to participate in the sex offender
treatment program has resulted in various consequences, including
denial of parole.

On December 17, 2008, the court entered an order, adopting the PF&R with respect to the motions to dismiss filed by the Honorable Louis H. Bloom, dismissing all claims against Judge Bloom, and deferring judgment on the recommendations of the magistrate judge with respect to the remaining defendants.  The court granted the parties an opportunity to conduct additional briefing on the issues addressed by the magistrate judge in her PF&R.  That briefing has concluded, and the matters are ripe for disposition.

With respect to the defendants other than Judge Bloom, the magistrate judge recommends that the court order that:

1.    The motion to dismiss and second motion to dismiss of Correctional Medical Services be denied without prejudice;[1]

2.    The motion to dismiss filed by Rebecca Bostic be granted;

3.    The amended motion to dismiss filed by the prison and parole defendants be granted as to the West Virginia Parole Board on quasi-judicial immunity; and

---

[1] Inasmuch as no objection was filed with respect to this recommendation, the court finds that the magistrate judge's recommended disposition is correct, and the motions are denied.

3

4.      The amended motion to dismiss filed by the remaining

defendants, being referred to collectively as the

prison defendants,[2] be granted as to the prison

defendants in their official capacity as to money

damages only but not as to possible injunctive relief,

be granted as to the prison defendants with respect to

expunging or correcting the presentence investigation

report, and be otherwise denied.[3]

Under Rule 72(b)(3) of the Federal Rules of Civil Procedure, a district judge resolving objections to a magistrate judge's PF&R "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id.

---

[2] This term refers to the Huttonsville Correctional Center defendants, the St. Mary's Correctional Center defendants, the Mt. Olive Correctional Complex defendants, and the Division of Corrections defendants, all of whom share the same counsel and filed their motions jointly.

[3] The magistrate judge further recommends that the motion to dismiss filed by the prison and parole defendants be denied as superseded.  Inasmuch as there has been no objection to this recommendation, the magistrate judge's recommendation is adopted, and that motion is denied.

4

Each of the motions considered by the magistrate judge in the PF&R was a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 127 S. Ct. at 1969)); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007).  The complaint need not, however, "make a case" against a defendant or even "forecast evidence sufficient to prove an element" of the claim.  Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th Cir. 2005) (quoting Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)).  Instead, the opening pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative

level." <u>Twombly</u>, 127 S. Ct. at 1965.

Application of the Rule 12(b)(6) standard also requires
that the court "'accept as true all of the factual allegations
contained in the complaint . . . .'" <u>Erickson</u>, 127 S. Ct. at
2200 (quoting <u>Twombly</u>, 127 S. Ct. at 1965); <u>see also</u> <u>South</u>
<u>Carolina Dept. of Health & Environmental Control v. Commerce and</u>
<u>Industry Ins. Co.</u>, 372 F.3d 245, 255 (4th Cir. 2004) (quoting
<u>Franks v. Ross</u>, 313 F.3d 184, 192 (4th Cir. 2002)).  The court is
additionally required to "draw[] all reasonable . . . inferences
from those facts in the plaintiff's favor . . . ." <u>Edwards v.</u>
<u>City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).


I. Rebecca Bostic


The magistrate judge recommends that the court dismiss
the plaintiff's claims against Rebecca Bostic on the ground of
absolute quasi-judicial immunity for her role in preparing and
submitting the presentence investigation report.  The plaintiff
acknowledges the applicability of the doctrine of absolute
immunity to probation officers for their preparation of such
reports, and does not object to the finding that Bostic is immune
from plaintiff's action to the extent that it concerns the

preparation and presentation of the report.  The court, accordingly, adopts the magistrate judge's recommendation to the extent that she suggests that the court find that Bostic is entitled to absolute immunity for her preparation and submission of the presentence investigation report.

The plaintiff objects to the magistrate judge's recommendation that Bostic be dismissed inasmuch as the plaintiff's allegations against Bostic, according to the plaintiff, are not limited to the judicial function of preparation and submission of a report.  Rather, the plaintiff contends that Bostic acted outside the scope of her protected judicial role when, approximately one year after the plaintiff was sentenced, she responded to a request for information made by the director of classification at the Huttonsville Correctional Center regarding the substance of her presentence investigation report and supplied documents in support thereof but did not provide a copy of a July 12, 2005, letter written by Bostic to plaintiff's counsel in the underlying criminal case in which she acknowledges that the plaintiff and his wife have several differences of opinion regarding matters contained in the presentence investigation report.

The July 12, 2005, letter that is the basis of the

7

plaintiff's claim against Bostic was written by Bostic to Peter
A. Hendricks, the plaintiff's attorney in the underlying criminal
case, and was entitled "Response to Exceptions."  The contents of
the letter indicate that it was written in response to a letter
from Hendricks to Bostic containing objections and requests for
corrections to the presentence investigation report.[4]

Letters such as the one sent by Hendricks to Bostic and
the response written by Bostic to Hendricks are contemplated by
Rule 43.01 of the West Virginia Trial Court Rules, which states
that counsel for the defendant has five days, following the
probation officer's disclosure of the presentence investigation
report to the defendant, to communicate to the probation officer
any objections the defendant has to the contents of the report.
The communication is to be made in writing, with copies served on
opposing counsel and the probation officer.  Upon receipt of the
defendant's written objections, the probation officer may conduct

---

[4] The plaintiff objects to the July 12, 2005, letter on the
ground that it does not appear on the docket in the underlying
criminal case and, consequently, there is a "question of fact
whether Ms. Bostic's letter . . . was actually prepared as part
of Plaintiff's sentencing process, or sometime later."  Inasmuch
as Rule 43.01 of the West Virginia Trial Court Rules does not
contemplate that letters such as the ones sent by Hendricks and
Bostic be submitted to the sentencing judge for consideration,
the court finds that the plaintiff's objection is based upon pure
speculation and is lacking in merit.

further investigation, make revisions to the report, and meet with counsel to discuss unresolved factual and legal issues.  The final presentence report is to be submitted to the sentencing judge along with an addendum setting forth objections that have not been resolved, along with the probation officer's recommendations.

Specifically, in the July 12, 2005 letter, Bostic addresses objections made by plaintiff's counsel relating to child support, the age of the plaintiff's ex-wife at the time she and the plaintiff began their relationship, Bostic's characterization of the plaintiff as having a tendency to elude authorities, the plaintiff's alleged use of a fraudulent birth certificate when he married his now ex-wife, and a statement by his ex-wife that she would drop her civil suit against the plaintiff if the plaintiff would relinquish his parental rights. The only matters relevant for the purposes of this action are those matters which would be pertinent to the plaintiff's classification by the division of corrections.

With regard to the age of the plaintiff's ex-wife at the time they began their relationship, the presentence investigation report indicates that the plaintiff became intimate with his ex-wife at some point by her age of fifteen to eighteen.

9

In the July 12, 2005 letter, Bostic states that the timing of their relationship is unknown and that the victim and the defendant have a difference of opinion about when the relationship began.  With regard to the plaintiff's use of a fraudulent birth certificate, the presentence report states that the victim has provided a document for the sentencing judge's review that shows that the plaintiff obtained a fraudulent birth certificate for her that showed her to be one year older than her real age.  The letter adds that the plaintiff denies doing so.

Bostic's communication with the director of classification is reflected in a letter sent by William S. Haines, then-warden at the Huttonsville Correctional Center, to Jim Rubenstein, commissioner for the division of corrections, on July 7, 2006.  This letter was apparently written after the plaintiff wrote a letter to Senator Rockefeller asserting that he was incorrectly classified.  In the July 7, 2006 letter, Haines reports that the Huttonsville director of classification contacted Bostic for clarification on issues raised by the plaintiff in his letter to the Senator.  The director relayed to Haines that Bostic "stands behind the veracity of her report" and mailed a more thorough report to the director, which included police reports, photographs, family court papers, letters written

by the plaintiff to his ex-wife, "and various other miscellaneous documents, which reinforce the program recommendations made by Gilmore's Unit Team." Based upon the review conducted by the director of classification, Haines assures Rubenstein that the plaintiff has been classified appropriately with the information available to the classification team.

The question before the court is whether Bostic's communications with the division of corrections constitutes conduct within the scope of her protected judicial role. The court has previously discussed the scope of the quasi-judicial immunity of a probation officer in <u>Gant v. United States Probation Office</u>, 994 F. Supp. 729 (S.D. W. Va. 1998) (Faber, J.). In <u>Gant</u>, the court considered whether a federal probation officer's conduct came within the scope of judicial immunity under circumstances where the probation officer attempted to collect a special assessment imposed by the court during sentencing, the officer then petitioned the court for a revocation proceeding when the plaintiff did not pay the assessment, a summons (rather than an arrest warrant) was then issued to secure the plaintiff's appearance, and the revocation proceeding never occurred because the plaintiff voluntarily complied. <u>Id.</u> at 734.

11

The court stated that to determine whether particular conduct falls within the scope of quasi-judicial immunity, the court must consider the nature of the conduct being challenged and whether the threat of exposure of the probation officer to civil liability would adversely impact upon the officer's exercise of that function.  Id. at 733.  The court considered the following six factors, as enumerated by the United States Supreme Court in Cleavinger v. Saxner, 474 U.S. 193, 202 (1985), and Butz v. Economou, 438 U.S. 478, 512-13 (1978):

    1)   the need to assure that the individual can perform
         his functions without harassment or intimidation;
    2)   the presence of safeguards that reduce the need
         for private damages actions as a means of
         controlling unconstitutional conduct;
    3)   insulation from political influence;
    4)   the importance of precedent;
    5)   the adversary nature of the process; and
    6)   the correctability of error on appeal.

Id. (citing Cleavinger v. Saxner, 474 U.S. 193, 202 (1985); Butz v. Economou, 438 U.S. 478, 512-13 (1978)).

        The Gant court noted that probation officers uniformly have been granted absolute immunity for the preparation and submission of presentence reports for the reason that they "act 'as an arm of the court' when amassing and providing the court enough information to meaningfully perform its sentencing obligations."  Id. at 733 (citing Dorman v. Higgins, 821 F.2d

133, 136 (2d Cir. 1987); Demoran v. Witt, 781 F.2d 155 (9th Cir.
1985); Tripati v. INS, 784 F.2d 345 (10th Cir. 1986); Hughes v.
Chesser, 731 F.2d 1489 (11th Cir. 1984); Spaulding v. Nielsen,
599 F.2d 728 (5th Cir. 1979); Burkes v. Callion, 433 F.2d 318
(9th Cir. 1970)).  In contrast, absolute immunity generally does
not protect probation officers in initiating probation or
supervised release revocation proceedings and seeking arrest
warrants, where their role is more akin to that of a police
officer.  Id.  The court concluded that the probation officer was
entitled to quasi-judicial immunity inasmuch as he was simply
enforcing a court order when he attempted to collect the special
assessment.  Id. at 734.

        Chapter 62, Article 12 of the West Virginia Code
outlines the powers and duties of probation officers, among other
matters relating to probation and parole.  West Virginia Code §
62-12-7 requires probation officers to present a presentence
investigation report to the sentencing judge and to file a copy
with the Board of Probation and Parole.  West Virginia Code § 62-
12-7a provides for the submission of the presentence report to
the commissioner of corrections for use by the diagnosis and
classification unit of the division of corrections.  At first
blush it appears that inasmuch as Bostic was responding to an

13

inquiry made by the division of corrections regarding the presentence investigation report, which was submitted to the commissioner of corrections as required by statute, Bostic was performing a function more closely related to her judicial function of report preparation and submission, and less related to potentially non-protected duties such as initiation of probation or supervised release revocation proceedings and seeking arrest warrants.

Upon closer examination and consideration of the six factors identified by the United States Supreme Court, the proper resolution becomes less clear.  When a probation officer submits a copy of the presentence investigation report to the commissioner of corrections, she is submitting a document that has been subjected to a number of procedural safeguards designed to protect the defendant's constitutional right not to be sentenced on the basis of information that is materially false. See Townsend v. Burke, 334 U.S. 736 (1948).  Before the report is submitted to the court, the defendant and his counsel have an opportunity to review the report and notify the probation officer of objections and requests for corrections pursuant to Rule 43.01 of the West Virginia Trial Court Rules.  The document is subsequently reviewed by the sentencing judge who may make

14

determinations as to what may or may not be considered in
sentencing pursuant to Rule 32(c)(1) of the West Virginia Rules
of Criminal Procedure.  The court then prepares a written record
of its findings and determinations, which is appended to any copy
of the presentence investigation report made available to the
Board of Parole.  Any determination made by the sentencing court
is then subject to review on appeal.  Thus the presentence report
is subject to adversary scrutiny and two layers of judicial
review.  In contrast, if a probation officer were to send
information to the division of corrections that was not addressed
or contained in the presentence investigation report, such
information would not be subject to adversary scrutiny and
judicial review.  It is difficult to see how a submission of
information under such circumstances could be considered within
the scope of the officer's judicial function.

        Regarding the July 12, 2005 letter, the court concludes
that Bostic was not acting outside the scope of her judicial role
when she did not provide this letter to the division of
corrections upon their request for information.  In reviewing the
contents of the letter and comparing those contents with the
contents of the presentence report, the court observes that the
report adequately indicates the dispute over the age of the

plaintiff's ex-wife when the two of them began their sexual relationship.  The letter adds little to the contents of the report as to this issue.

     With respect to the materials that Bostic did furnish, the court cannot conclude on the information provided by the parties whether she was acting within her judicial role inasmuch as the court does not know exactly what materials Bostic sent to the director of classification.  Those materials have been summarized simply as police reports, photographs, family court papers, letters written by the plaintiff to his ex-wife, "and various other miscellaneous documents, which reinforce the program recommendations made by Gilmore's Unit Team."  To the extent that it may later be determined that the communications related to matters that were covered by the presentence investigation report, the communications may be protected, but that determination cannot be made at this juncture.

     Inasmuch as the court does not know the nature of the communications between Bostic and the division of corrections, the court is unable to determine whether her conduct outside the presentence report is protected by absolute quasi-judicial

immunity.[5]  Accordingly, her motion to dismiss beyond the presentence report is denied.

## II. The West Virginia Parole Board

The magistrate judge recommends that the West Virginia Parole Board be dismissed from the action with prejudice on the ground that it is a quasi-judicial entity entitled to absolute judicial immunity from liability.  The plaintiff contends that the magistrate judge recommends the Board's dismissal as to money damages but not prospective relief, but it appears that her recommendation is that the Board be dismissed completely.

Case law in the Fourth Circuit and the State of West Virginia clearly provides that quasi-judicial immunity protects parole board members from section 1983 actions for damages.  <u>See, e.g., Pope v. Chew</u>, 521 F.2d 400, 405 (4th Cir. 1975) ("Parole Board members have been held to perform a quasi-judicial function in considering applications for parole and thus to be immune from damages in § 1983 actions."); <u>Parkulo v. West Virginia Board of</u>

---

[5] Bostic makes the further arguments that she is protected by qualified immunity and Eleventh Amendment immunity.  Inasmuch as neither argument was made in her motion to dismiss, these questions are not properly before the court at this time.

Probation and Parole, 199 W. Va. 161, 483 S.E.2d 507, 525 (1997).
The law is not so clear with respect to immunity in actions for
injunctive relief.  In Pulliam v. Allen, 466 U.S. 522, 537
(1984), the United States Supreme Court held that judicial
immunity did not extend to claims for injunctive relief.  Twelve
years later, Congress passed the Federal Courts Improvement Act,
amending section 1983 to bar injunctive relief "in any action
brought against a judicial officer for an act or omission taken
in such officer's judicial capacity . . . unless a declaratory
decree was violated or declaratory relief was unavailable."  42
U.S.C. § 1983.

Neither the Supreme Court nor the Fourth Circuit has
addressed whether section 1983 protects quasi-judicial actors,
such as the West Virginia Parole Board members, from actions for
injunctive relief, but the decided weight of authority has found
that quasi-judicial actors are immune from such actions.  See
Montero v. Travis, 171 F.3d 757, 761 (2d Cir. 1999); Roth v.
King, 449 F.3d 1272, 1286-87 (D.C. Cir. 2006); Gilbert v. Ferry,
401 F.3d 411, 414 n.1 (6th Cir. 2005) (dicta); Pelletier v. Rhode
Island, No. 07-186S, 2008 WL 5062162, at *5-6 (D.R.I. Nov. 26,
2008); Cannon v. South Carolina Dept. of Corrections, No. 07-
3984, 2008 WL 269519, at *4 (D.S.C. Jan. 29, 2008); Von Staich v.

Schwarzenegger, No. 04-2167, 2006 WL 2715276 (E.D. Cal. Sept. 22, 2006); contra Simmons v. Fabian, 743 N.W.2d 281 (Minn. Ct. App. 2007).

Inasmuch as the plaintiff has not alleged that a declaratory decree was violated or declaratory relief is unavailable, the court finds that the West Virginia Parole Board is a quasi-judicial entity that is entitled to absolute judicial immunity from the plaintiff's suit for both damages and prospective, non-monetary relief.  Accordingly, the Board is dismissed from this action in its entirety.

### III. The Prison Defendants

### A. Eleventh Amendment and Qualified Immunity

The magistrate judge recommends that the claims for compensatory relief against the prison defendants in their official capacities be dismissed on the ground that the prison defendants are not "persons" under section 1983 in their official capacities with respect to compensatory relief.  The prison defendants agree with this finding but object to the magistrate judge's corresponding observation that "[a] state official sued

in his individual capacity is not protected by the Eleventh
Amendment and is a 'person' under § 1983."  The court agrees with
the magistrate judge's conclusion in this respect as well as her
further conclusion that the defendants not otherwise dismissed
herein may be the subject of injunctive relief in their official
capacities.

        The magistrate judge makes no express recommendation as
to the plaintiff's claims against the defendants in their
individual capacities, presumably because the prison defendants
did not move for dismissal of the plaintiff's claims against them
in their individual capacities.  The prison defendants contend
that they did not move for dismissal of the plaintiff's
individual capacity claims because at the time they filed their
amended motion to dismiss on August 25, 2008, the complaint did
not include individual capacity claims.  The individual capacity
claims were added to the complaint after the magistrate judge
granted the plaintiff's motion for leave to file an amended
complaint, which motion was granted by order entered October 29,
2008.  The defendants were unable to amend their motion to
dismiss to address the individual capacity claims because on
October 28, 2008, the magistrate judge ordered all parties to
immediately cease filing motions until the court ruled on those

which were already pending.  Inasmuch as the prison defendants
did not enjoy the opportunity to move to dismiss the plaintiff's
individual capacity claims following the filing of the amended
complaint, they will be afforded the time in which to do so to
the extent of raising the defense of qualified immunity.

B. Authority to Expunge or Correct Presentence Information and
Prison File Information

        The magistrate judge recommends that the court find
that the plaintiff has failed to state a claim upon which relief
can be granted to the extent that the plaintiff's claim is that
the prison defendants have a duty to correct the allegedly false
information in the presentence investigation report.  The
plaintiff makes no objection to this recommendation, and it is
adopted.

        Rather, the plaintiff responds that he seeks to have
the prison defendants correct or expunge only the errors that
they have created in his prison file.  He claims that he has
tried to complete the forms for discrepancies but has been unable
to do so because prison officials have prevented him from
obtaining the necessary forms.  Inasmuch as the prison defendants
do have authority to correct errors in documents that they

generated and placed in the plaintiff's file, the court finds
that the plaintiff has stated a claim upon which relief can be
granted.

The magistrate judge further recommends that the court
find that the plaintiff has stated a claim of constitutional
magnitude because the plaintiff alleges that false information is
in his prison file and it is relied on to a constitutionally
significant degree inasmuch as he is being denied parole because
of the false information.  In making this recommendation, she
relies on the Fourth Circuit's opinion in Paine v. Baker, 595
F.2d 197 (4th Cir. 1979).  The prison defendants object to the
magistrate judge's reliance on Paine, asserting that Paine is no
longer good law inasmuch as there is no federal liberty interest
in parole.

In Paine, the Fourth Circuit held that "in certain
limited circumstances a claim of constitutional magnitude is
raised where a prisoner alleges (1) that information is in his
file, (2) that the information is false, and (3) that it is
relied on to a constitutionally significant degree."  Paine, 595
F.2d at 201.  The court stated that the third prong of the test
-- whether the information is relied on to a constitutionally
significant degree -- would be satisfied where it is relied on to

22

deny parole inasmuch as a conditional liberty interest would be at stake.  Id. at 202.  Two months after the court decided Paine, the United States Supreme Court handed down its decision in Greenholtz v. Inmates of the Nebraska Penal and Correction Complex, 442 U.S. 1 (1979).  In Greenholtz, the majority held that under the United States Constitution "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  Greenholtz, 442 U.S. at 7.

Nonetheless, as recognized by the Supreme Court in Board of Pardons v. Allen, 482 U.S. 369, 373 (1987), and considered by the Fourth Circuit in Hill, a state statute can create a liberty interest in parole release that is protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution where the statute gives rise to a legitimate "expectation of parole."  In order to create a liberty interest, the state statute must mandate "not procedures alone, or even procedures plus substantive predicates (objective criteria) alone, but substantive results once prescribed procedures have revealed that substantive predicates have been established."  Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994) (emphasis in original).  "Whether any state statute provides a protectible

entitlement must be decided on a case-by-case basis."
Greenholtz, 442 U.S. at 12 (finding that the Nebraska parole
statute did not create a liberty interest because it was in part
subjective and predictive and vested broad discretion in the
Parole Board).

To determine whether the West Virginia parole statute
creates a liberty interest in parole under the United States
Constitution, the court must consider whether it gives rise to a
legitimate expectation of parole.  West Virginia Code § 62-12-13
provides that a prisoner will be eligible for parole, with some
exceptions, when he (1) has served the minimum term of his
indeterminate sentence or one-fourth of his definite term
sentence, (2) is not in punitive segregation or administrative
segregation as a result of disciplinary action, (3) has
maintained a record of good conduct for at least three months
prior to his parole release, (4) has submitted a written parole
release plan approved by the Commissioner of Corrections, and (5)
has satisfied the board that if released he will not constitute a
danger to the community.  Comparing the Nebraska statute
discussed by the court in Greenholtz to the West Virginia
statute, the court finds that West Virginia law does not create a
federal liberty interest in parole release inasmuch as the fifth

requirement, like the requirements of the Nebraska statute, is subjective and predictive and vests broad discretion in the Parole Board.  The plaintiff, accordingly, does not state a claim of constitutional significance under the United States Constitution.

As noted by the magistrate judge, however, the West Virginia Supreme Court held in Tasker v. Mohn, 165 W. Va. 55, 267 S.E.2d 183 (1980), that the West Virginia parole statute does create a liberty interest in parole release under the Due Process Clause of the West Virginia Constitution.  Tasker, 267 S.E.2d at 185 n.1, 188.  In Tasker, the West Virginia court considered the United States Supreme Court's ruling in Greenholtz and stated that while it agreed with the Supreme Court majority that an inmate must demonstrate a statutory entitlement to parole to implicate due process requirements, it believed that the majority "falter[ed] in its emphasis on the statutory language."  Id. at 187.  Instead, the West Virginia Court agreed with the Greenholtz dissenters who stated that:

> the presence of a parole system is sufficient to create
> a liberty interest, protected by the Constitution, in
> the parole release decision. . . .  From the day that
> he is sentenced in a State with a parole system, a
> prisoner justifiably expects release on parole when he
> meets the standards of eligibility applicable within
> that system.

25

Id. (quoting Greenholtz, 442 U.S. at 20 (Powell, J., concurring
and dissenting)).  The West Virginia court then considered the
West Virginia parole statute and held that under the West
Virginia Constitution, the parole statute creates a legitimate
reasonable expectation that parole will be granted.  Id.  Based
upon the West Virginia Supreme Court's ruling in Tasker, the
plaintiff has stated a claim of constitutional magnitude under
the West Virginia Constitution.


C. Constitutionally Protected Liberty Interest in Refusing to
Participate in Sex Offender Treatment

        The magistrate judge recommends that the court find
that the plaintiff has stated a claim upon which relief can be
granted based on a constitutionally protected liberty interest in
not being classified as a "sex offender" and in not being
required to undergo sex offender treatment, without due process
of law, because he was not convicted of a sex offense.  She
further recommends that the court find that the plaintiff has
stated a claim upon which relief can be granted with respect to
his contention that his right to due process of law was violated
when he was not given those procedural rights set forth in Tasker
v. Mohn, 165 W. Va. 55, 267 S.E.2d 183 (1980), and Wolff v.
McDonnell, 418 U.S. 539 (1974), in connection with his purported

26

sex offender status.

In making these recommendations, the magistrate judge observes that the question of whether there exists a constitutionally protected liberty interest in being free from participation in a prison's sexual offender treatment program is a matter of first impression in the Fourth Circuit Court of Appeals and the federal courts in the states comprising the Fourth Circuit.  She identifies cases from the Fifth, Ninth, Tenth, and Eleventh circuit courts of appeal in which those courts conclude that such a liberty interest does exist.  Based upon the decisions of these four circuit courts and the West Virginia Supreme Court's holding in Tasker that West Virginia law gives prisoners a liberty interest in parole, she concludes that West Virginia cannot deprive a prisoner of parole by labeling him a sex offender when he was not convicted of a sex offense, without providing him the process which is due.

The magistrate judge aptly summarized the decisions of the four circuit courts that she considered in her PF&R, and the court need not repeat those summaries herein.  Suffice it to say that those courts relied on the Supreme Court's holding in Sandin v. Conner, 515 U.S. 472, 484 (1995), that when a change in the prisoner's conditions of confinement is so severe that it

27

essentially exceeds the sentence imposed by the court, a prisoner is entitled to some procedural protections.  Those courts hold that "the stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections."  Neal v. Shimoda, 131 F.3d 818, 830 (9th Cir. 1997); see Coleman v. Dretke, 395 F.3d 216 (5th Cir. 2004); Chambers v. Colorado Dep't of Corrections, 205 F.3d 1237 (10th Cir. 2000); Kirby v. Siegelman, 195 F.3d 1285 (11th Cir. 1999).

        The prison defendants object to the magistrate judge's recommendation on four bases.  First, they contend that each of the four circuit court cases referenced by the magistrate judge is distinguishable because in each case the treatment program required the inmate to admit his sexual misconduct, whereas West Virginia's program "contains various levels of treatment, with the first level consisting of education only."  In two of the cases, Neal in the Ninth and Kirby in the Eleventh, the admission requirement was relevant only to a separate claim asserted by the plaintiffs (a claim based upon their right to be free from self incrimination).  The court finds nothing in any of the four

28

circuit courts' decisions that indicates that any of the courts considered the admission requirement essential to its recognition of a liberty interest.  Nor do the prison defendants explain in their briefing why such a distinction would make a difference.

The prison defendants also object to the magistrate judge's reliance on the Ninth and Eleventh Circuits' opinions on the ground that, according to the defendants, the Ninth and Eleventh Circuits have issued rulings inconsistent with those relied on by the magistrate judge.  Specifically, the defendants contend that the Ninth Circuit's opinion in Russell v. Gregoire, 124 F.3d 1079 (9th Cir. 1997), conflicts with its earlier decision in Neal.  The court does not agree.  Russell concerned the right to privacy of two convicted sex offenders who were subjected to community notification under a statute commonly referred to as "Megan's law."  Russell, 124 F.3d at 1081-82, 1094.  The court held that they had no privacy interest in the information contained in the community notification inasmuch as that information was already available to the public and was not constitutionally protected.  Id. at 1094.  The court did not consider the liberty interests of inmates required to undergo a course of treatment for a crime of which they were never convicted.

The prison defendants also contend that the Eleventh Circuit's unpublished opinion in <u>Kramer v. Donald</u>, 286 Fed. Appx. 674 (11th Cir. 2008), conflicts with its earlier decision in <u>Kirby</u>.  The defendants fail to note, however, that in <u>Kramer</u> the court expressly distinguished <u>Kirby</u> on the ground that Kirby was classified as a sex offender, whereas Kramer was not, and so Kramer was not subjected to the stigmatizing effect of being so classified.  Rather, Kramer was required to undergo treatment because the non-sexual offense for which he was imprisoned had a sexual component that warranted counseling.

The prison defendants further contend that the magistrate judge failed to consider opinions from courts that have come to conclusions contrary to <u>Neal</u>, <u>Kirby</u>, <u>Coleman</u>, and <u>Chambers</u>.  The defendants cite four cases in which courts, according to the defendants, hold that there is no liberty interest in not being labeled as a sex offender for inmates who have not been convicted of a sex offense.

The first of the four cases relied upon by the prison defendants is <u>Gunderson v. Hvass</u>, 339 F.3d 639 (8th Cir. 2003).  In <u>Gunderson</u>, the court held that damage to one's reputation caused by a requirement to register as a sex offender is not

30

sufficient by itself to invoke the procedural protections of the
due process clause. Id. at 644. Inasmuch as the Minnesota
statute did not provide for public dissemination of the
registration and further inasmuch as the burdens of complying
with the registration requirements were minimal, the court found
that the plaintiff had not identified a protected liberty or
property interest. Id. at 645. In contrast, here as well as in
the four cases relied upon by the magistrate judge, the
plaintiffs suffered more than just injury to their reputations.
They were subjected to the additional burden of being required to
participate in a sex offender treatment program and risked losing
parole eligibility if they failed to do so.

The second case is that of Grennier v. Frank, 453 F.3d
442 (7th Cir. 2006). In Grennier, an inmate serving a life
sentence on convictions of arson, burglary, and murder arising
from circumstances involving necrophilia was denied parole, in
part, because he failed to complete a sex offender treatment
program. The Seventh Circuit held that, as a lifer, the inmate
lacked a liberty or property interest in parole[6] and,

_____

[6] Under Wisconsin's parole system a prisoner with a fixed
term presumptively is entitled to parole after serving two-thirds
of his sentence, so a liberty interest arises at that point.
Prisoners sentenced to life, however, never acquire a presumptive
entitlement to parole under this system because there is no such

accordingly, had no entitlement to a hearing under the due process clause.  The court expressly distinguished the circumstances of the inmate's case from those in <u>Coleman</u>, <u>Chambers</u>, <u>Kirby</u>, and <u>Neal</u>, rejecting the inmate's contention that those four cases stood for the proposition that the stigma of being called a "sex offender" is enough by itself to deprive a person of liberty or property.  The court stated:

> Doubtless these four decisions contain some language to that effect.  But they do not so hold, because in each the sex offender designation was pertinent to a decision that the court believed to entail a protected interest (such as an opportunity for parole under a non-discretionary system -- say, one providing that "every well-behaved prisoner except a sex offender is entitled to parole after serving 20 years").  It was the liberty or property interest stemming from statutes and regulations, and not the "sex offender" label alone, that required the hearing.
>
> <u>Paul v. Davis</u>, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976), holds that the shame and humiliation of being called a criminal is not enough by itself to require a hearing under the due process clause. . . . [O]nly when the state goes further and makes a concrete decision that affects liberty or property . . . is a hearing essential.

<u>Grennier</u>, 453 F.3d at 445.[7]

_____

thing as two-thirds of a life sentence.

[7] The other two cases, both unpublished, relied on by the defendants are <u>Renchenski v. Williams</u>, No. 3:06-cv-278, 2007 WL 2155542 (M.D. Pa. Jul. 26, 2007), and <u>Talouzi v. O'Brien</u>, No. 05-cv-235-HRW, 2006 WL 625292 (E.D. Ky. Mar. 10, 2006).  These cases cite to and rely on the rationale of <u>Grennier</u>, which the court has already discussed.

The court agrees with the Seventh Circuit's conclusion that <u>Coleman</u>, <u>Chambers</u>, <u>Kirby</u>, and <u>Neal</u> do not stand for the proposition that the stigma of being labeled a "sex offender," alone, is enough to implicate due process protections.  A plaintiff must also show that he experienced some governmentally imposed burden that "significantly altered [his] status as a matter of state law."  <u>Paul</u>, 424 U.S. at 710-11.  This is sometimes described as the "stigma plus" standard.  But the Seventh Circuit limited its consideration to whether or not there was a liberty interest in parole and did not discuss whether the treatment program significantly altered the inmate's status.

Like the Fifth, Ninth, Tenth, and Eleventh Circuits, the court concludes that a sex offender treatment program could constitute a change in the conditions of confinement so severe as to essentially exceed the sentence imposed by the court.  Here, although the plaintiff has no liberty interest in parole under the United States Constitution, he has been required to undergo treatment for behaviors in which it has not been proven he has engaged.  Whether or not the treatment program is so severe as to essentially exceed the plaintiff's sentence remains a question of fact.  Moreover, the plaintiff has a liberty interest in parole under the West Virginia Constitution, so, at the very least, he

33

has stated a claim under the West Virginia Constitution that is not inconsistent with the Seventh Circuit's holding in <u>Grennier</u>.

In summary, the court finds each of the defendants' objections to the magistrate judge's PF&R with regard to plaintiff's liberty interest in refusing to participate in sex offender treatment to be lacking in merit.  The magistrate judge thoroughly considered the cases from other jurisdictions that were most on point with the circumstances presently before the court and reached a well reasoned resolution.

D. Correct Classification

The prison defendants argued in their motion to dismiss that the plaintiff's section 1983 claims "should be dismissed with prejudice because he has been classified correctly as a Level III Inmate."  Their briefing centered on why he was classified as a level III inmate and why that classification was the correct one.  Their briefing was accompanied by supporting evidence.  Specifically, they contend that he was properly classified as a level III because he used a 200,000 volt stun gun in the commission of the burglary for which he is currently serving a sentence.  In the PF&R, the magistrate judge recommends

that the court find that the prison defendants have not made an argument concerning the plaintiff's classification that can be addressed on a motion to dismiss.  The court concludes that the magistrate judge's assessment is correct.

In their objections, the prison defendants make a new argument that was not presented to the magistrate judge.  They contend that the plaintiff should not be permitted to maintain a section 1983 action against them for incorrectly classifying him because prisoners have no liberty interest in retaining or receiving a particular security or custody status.  In Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994), the Fourth Circuit Court of Appeals observed that the "federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . . and is not otherwise violative of the Constitution.'"  Slezak, 21 F.3d at 594.  "Within these limits, so far as the federal constitution is concerned, the security and custody classification of state prison inmates is a matter for state prison official discretion whose exercise is not subject to federal procedural due process constraints."  Id.

A liberty interest in retaining or attaining a

35

particular security classification may be created by state law.
Id.  In order to do so, the state law must in effect "plac[e]
substantive limitations on official discretion, . . . thereby
giving rise, at the limits imposed upon discretion, to
'legitimate claim[s] of entitlement' . . . to the classification
sought and administratively denied."  Id. (internal citations
omitted).  In other words, "constitutionally protected liberty
interests are only created by state law regimes which in the end
effectively say to inmates; 'If facts A, B, and C are established
in an appropriate fact-finding process, you are thereupon legally
entitled to a more favorable security or custody classification
than you presently have' or, 'Unless facts A, B, and C are so
established, you are legally entitled not to be placed in a less
favorable classification than you now have.'"  Id. at 595.

     Neither West Virginia Code § 62-13-4, the statute that
creates and defines the powers of the West Virginia Division of
Corrections, nor the West Virginia Division of Corrections
classification guidelines creates a legitimate expectation of
receiving or maintaining a particular classification.  The
statute simply provides that the commissioner or director of
corrections management shall "[e]stablish a system of
classification of inmates, through a reception and examination

36

procedure, and in each institution a classification committee and
procedure for assignment of inmates within the programs of the
institution."  The guidelines merely set out procedures to be
followed in assigning a classification and they provide for
discretionary review by higher-level prison officials.  The
parties have identified no other source of a liberty interest in
a particular classification under West Virginia law.  The court,
accordingly, finds that West Virginia law does not create a
constitutionally protected liberty interest in retaining or
attaining a particular security or custody classification.  The
plaintiff thus cannot state a claim upon which relief can be
granted with respect to the correctness of his security
classification.

          This conclusion, however, does not provide a basis for
dismissal of his claim.  As the plaintiff indicates in his
amended complaint, he is not challenging his classification as a
level III.  He challenges the correctness of his classification
only to the extent that it relates to his being classified as a
sex offender.  He states:

     The DOC defense counsel want to talk about the level
     III being provided only by attachment of a weapon.
     This is simply not what was being indicated to this
     Plaintiff.  It was to have increased and would remain
     increased because of the fact that [sic] of being
     deemed a sex offender.  This Plaintiff's greatest

concerns were about being labeled a sex offender by the
DOC defendants, and surly [sic] not being bumped to a
level III.

(Am. Compl. 20).  As earlier noted, the plaintiff has adequately

stated a claim regarding the additional burdens placed upon him

as a result of his classification as a sex offender.


E. Failure to Exhaust Administrative Remedies


        With respect to administrative exhaustion, the

magistrate judge recommends that the court find that the prison

defendants have not supplied sufficient evidence to support their

argument of failure to exhaust.  The defendants object to this

recommendation and attach the affidavits of Charlene Sotak,

Grievance Coordinator for the Division of Corrections, and Regina

Stephenson, Classification Director for Mount Olive Correctional

Complex, which the defendants contend show that the plaintiff did

not appeal any classification or program recommendations except

on April 20, 2006, at the Huttonsville Correctional Center and on

August 2, 2006, at St. Mary's Correctional Center.  The

defendants assert that the plaintiff failed to appeal following

his reclassifications at St. Mary's on October 17, 2006, and

January 1, 2007, and at Mount Olive on April 11, 2007, and March

20, 2008.  The plaintiff responded to the defendants' objections,

asserting that he was told he was not allowed to file any further grievances on the matter of classification and contending further that the matter of exhaustion should be subjected to discovery and resolved on a motion for summary judgment rather than a motion to dismiss.

Where matters outside of the pleadings, such as the affidavits supplied by the defendants, are presented with a motion to dismiss under Rule 12(b)(6), "federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings . . . and to rely on it, thereby converting the motion [to a motion for summary judgment], or to reject it or simply not consider it."  5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366.  In resolving the present motion to dismiss, the court declines to consider the two affidavits presented by the prison defendants.  Neither affidavit was presented to the magistrate judge for consideration.  Nor has discovery commenced in this action.

As the magistrate judge aptly noted, the Supreme Court held in Jones v. Bock, 549 U.S. 199 (2007), that an inmate's failure to exhaust remedies under the PLRA is an affirmative defense, and the inmate need not demonstrate in his complaint

39

that he has exhausted applicable remedies.  Affirmative defenses
are generally not appropriate for disposition under Rule
12(b)(6).  See Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th
Cir. 2007) (noting a Rule 12(b)(6) challenge, "which tests the
sufficiency of the complaint, generally cannot reach the merits
of an affirmative defense, such as the defense that the
plaintiff's claim is time-barred.").  An exception exists for the
"relatively rare circumstances where facts sufficient to rule on
an affirmative defense are alleged in the complaint . . . ."  Id.
The exception is strictly construed, requiring that all "facts
necessary to the affirmative defense 'clearly appear[ ] on the
face of the complaint.'"  Id. (quoting Richmond, Fredericksburg &
Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).  Nothing
apparent from the face of the plaintiff's complaint clearly
establishes that the plaintiff has failed to exhaust any
administrative remedies.  Accordingly, the court agrees with the
magistrate judge that none of the plaintiff's claims should be
dismissed at this stage of the litigation on the basis of this
affirmative defense.[8]

---

[8] Additionally, in making her recommendation, the magistrate
judge states in dicta that "there is a question as to whether an
inmate must repeatedly appeal a decision that is the same as a
prior decision which was appealed."  The prison defendants
challenge this observation, stating that the magistrate judge
cites to no case law in support of this observation.  Inasmuch as

F. Lack of a Physical Injury

The magistrate judge recommends that the court find that the plaintiff's allegations that he has suffered stomach and lower intestinal problems, headaches, cold sweats, rashes, nightmares, vomiting, and teeth grinding are sufficient to state a claim which meets the requirements of 42 U.S.C. § 1997e(e) that a prisoner make a showing of physical injury in order to recover for mental or emotional injury.  The prison defendants object on the ground that the magistrate judge, according to the defendants, jumps straight to the issue of causation without first considering whether, even when the allegations are taken as true, the plaintiff's claimed physical ailments actually rise to the level of a constitutional claim.  The defendants contend that the plaintiff's alleged injuries are de minimus and, accordingly, not actionable.

The defendants cite to five cases in support of their position that the plaintiff's alleged injuries are de minimus. Three of those cases, <u>Alexander v. Tippah County, Miss.</u>, 351 F.3d 626 (5th Cir. 2003); <u>Henderson v. Sheahan</u>, 196 F.3d 839 (7th Cir.

---

the court declines to consider the evidence proffered thus far and reserves the opportunity to consider the exhaustion issue at a later time, the court need not address this question now.

1999); and Oliver v. Deen, 77 F.3d 156 (7th Cir. 1996), are circuit court opinions in which the courts find that injuries similar to those asserted by the plaintiff are de minimus.  The cases are distinguishable from the circumstances presently before the court inasmuch as in each of the three cases the court was resolving a motion for summary judgment, rather than a motion to dismiss.  Discovery had been completed in each case and each court was aware of the extent of the plaintiff's injuries when it rejected the plaintiff's claims as failing to allege an injury that rises to the level of a constitutional violation.  Here, the parties have not yet conducted discovery, the court does not know the extent of the plaintiff's injuries, and the court must draw all reasonable inferences from the plaintiff's factual allegations in the plaintiff's favor.

        The other two cases cited by the defendants are unpublished district court cases from districts other than this one.  Hutchinson v. Civitella, No. 02-cv-2407(CBM), 2003 WL 22056997 (S.D.N.Y. Sept. 4, 2003), offers no support for the defendants' contention that the plaintiff's injuries are de minimus.  In Hutchinson, the court held that plaintiff's alleged injuries -- which included chest pain, nausea, vomiting, rapid weight loss, and dizziness -- were not individually serious

enough for purposes of the Eighth Amendment, but expressly declined to consider whether the injuries viewed together were more than de minimus.

Likewise, Martin v. Arpaio, No. CV 06-2218-PHX-DGC (DKD), 2006 WL 3717383 (D. Ariz. 2006), offers little support to the prison defendants' position.  In Martin, the plaintiff alleged that the jail's food handlers did not hold food handler permits and, further, that he had seen individuals serving meals while they had staph infections or strep throat.  Martin, 2006 WL 3717383, at *3.  The plaintiff claimed that as a result of these conditions he has been sick on many occasions with stomach cramps, diarrhea, and minor vomiting.  Id.  The court held that the plaintiff's allegation of cramps and diarrhea resulting from food handling appeared both conclusory and de minimus.  Id.  As earlier noted, a court must "'accept as true all of the factual allegations contained in the complaint,'" Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965), and "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor," Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).  Allegations, however inartfully pled by a pro se plaintiff, are sufficient to afford a plaintiff an opportunity to offer supporting evidence unless it is beyond doubt that the

plaintiff can prove no set of facts entitling him to relief.  See Cruz v. Beto, 405 U.S. 319 (1972).  While a court should not develop tangential claims from scant allegations, if a pro se plaintiff's complaint contains potentially cognizable claims, the plaintiff should be allowed to particularize these claims.  See Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir.1985); Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir.1965).  Although the plaintiff has not alleged the severity or frequency of his stomach and lower intestinal problems, headaches, cold sweats, rashes, nightmares and vomiting, and his teeth grinding in the complaint, which was pro se when filed, the court should presume for the purposes of this motion that they are severe and continuous.  In contrast, the plaintiff in Martin alleged only occasional sickness with minor vomiting.  The court, accordingly, finds Martin unhelpful at this stage in the litigation.

The court finds that the magistrate judge's recommendation on the physical injury issue is appropriate.

IV. Conclusion

The court concludes that the magistrate judge's recommended disposition is correct with respect to the motions

44

filed by Correctional Medical Services, the West Virginia Parole
Board, and the prison defendants.  It is, accordingly, ORDERED
that:

1.   The motion to dismiss and second motion to dismiss
     filed by Correctional Medical Services on August 12,
     2008, and August 15, 2008, respectively, be denied
     without prejudice;

2.   The motion to dismiss the West Virginia Parole Board
     filed on August 25, 2008, be granted on the basis of
     quasi-judicial immunity, and all claims against the
     West Virginia Parole Board be dismissed;

3.   The motion to dismiss filed by the prison defendants on
     August 19, 2008, be denied as moot;

4.   The amended motion to dismiss filed by the prison
     defendants on August 25, 2008, be granted as to the
     prison defendants in their official capacity as to
     money damages only but not as to possible injunctive
     relief, be granted as to the prison defendants with
     respect to expunging or correcting the presentence
     investigation report, be denied without prejudice as to
     the issue of qualified immunity, and be otherwise
     denied.

It is further ORDERED that the motion to dismiss filed by Rebecca Bostic on September 18, 2008, be granted as to the presentence investigation report and otherwise denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and the United States Magistrate Judge.

DATED:  March 27, 2009

John T. Copenhaver, Jr.
United States District Judge

46