UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION


BOYD GILMORE,

        Plaintiff,

v.                                    CIVIL ACTION NO: 2:08-cv-326


REBECCA BOSTIC, Kanawha County Adult
Probation Department, West Virginia
Board of Probation and Parole,

Huttonsville Correctional Center Defendants:
WILLIAM HAINES, Warden,
TERESA WAID, Deputy Warden,
DEBRA COTTRELL, Classification Director,
KENNETH AKINS, Case Manager and
Classification Committee Chair,
KAREN TETER, Records Department,

St. Mary's Correctional Center Defendants:
WILLIAM FOX, Warden,
MISTY ADAMS, Case Supervisor,
DAN KIMBLE, Original Classification Director,
ROBERT PARKER, Unit Manager,
RUSSELL MASTON, Records Supervisor,
KAROL PAYNE, Unit Manager and Later
Classification Director,
JOYCE BILLS, Institutional Parole Officer,

Mount Olive Correctional Complex Defendants:
DAVID BALLARD, Warden,
TOM SUMMERRELL, Case Supervisor and
Classification Committee Chair,
JANET PAYNE, Unit Manager,
LEE HARPER, Case Manager,
PAUL LYTTLE, Associate Warden of Programs,
DOROTHY KERR, Classification Chair,
LORI BURFORD, Records Supervisor,

Division of Corrections Defendants:
JIM RUBENSTEIN, Commissioner,

STEVE YARDLY, Deputy Commissioner,
CHARLENE SOTAK, Inmate Grievance Coordinator,

Mental Health Unit Defendants at Mount Olive:
CHERYL SNYDER, Administrator of Mental Health,
CRISTY FLORES, MHU, Licensed Social Worker,
TIM CARPER, MHU, Licensed Social Worker,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending are the motions to dismiss of the Prison Defendants,[1] filed May 8, 2009, and defendant Rebecca Bostic, filed May 11, 2009.

This action arises from the plaintiff's claim that, although he pled guilty to and was sentenced for the offense of burglary, he has been designated by the Prison Defendants as a "sex offender" and required to participate in sex offender treatment.  His refusal to participate in the sex offender treatment program has, according to the plaintiff, resulted in his being denied parole.

He was classified by the Prison Defendants as a "sex

---

[1] This term refers to the Huttonsville Correctional Center defendants, the St. Mary's Correctional Center defendants, the Mt. Olive Correctional Complex defendants, and the Division of Corrections defendants, all of whom share the same counsel and filed their motions jointly.

2

offender" based upon information contained in the presentence investigation report prepared by Bostic for sentencing on the burglary conviction.  According to the presentence report, the plaintiff first met the victim "at her age of twelve, counseling her professionally, but at some point by [her] age [of] fifteen to age eighteen, they became intimate."  (Presentence Report ¶ 27).  The plaintiff, who was born on May 10, 1961, would have been in his mid-twenties to early-thirties during this time.  He ultimately married the victim in 1992, and together they had five children, the first being born in 1994.  (Id. at ¶ 25).

Under West Virginia law, it is sexual assault in the third degree when a person, "being sixteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is less than sixteen years old and who is at least four years younger than the defendant and is not married to the defendant."  W. Va. Code § 61-8B-5.

## I. Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2);

3

_Erickson v. Pardus_, 127 S. Ct. 2197, 2200 (2007).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  _Bell Atlantic Corp. v. Twombly_, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), _overruled on other grounds_, _Twombly_, 127 S. Ct. at 1969)); _see also Anderson v. Sara Lee Corp._, 508 F.3d 181, 188 (4th Cir. 2007).  Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ."  _Twombly_, 127 S. Ct. at 1965.  It is now settled that "a formulaic recitation of the elements of a cause of action will not do."  _Id._; _Giarratano v. Johnson_, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not, however, "make a case" against a defendant or even "forecast evidence sufficient to prove an element" of the claim.  _Chao v. Rivendell Woods, Inc._, 415 F.3d 342, 349 (4th Cir. 2005) (quoting _Iodice v. United States_, 289 F.3d 270, 281 (4th Cir. 2002)).  Instead, the opening pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level."  _Twombly_,

4

127 S. Ct. at 1965; <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949

(2009)(noting the opening pleading "does not require 'detailed

factual allegations,' but it demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation.").  Stated another

way, the complaint must allege "enough facts to state a claim to

relief that is plausible on its face."  <u>Id.</u> at 1974; <u>Giarratano</u>,

521 F.3d at 302. The recent decision in <u>Iqbal</u> provides some

guidance concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to draw
> the reasonable inference that the defendant is liable
> for the misconduct alleged. The plausibility standard
> is not akin to a "probability requirement," but it asks
> for more than a sheer possibility that a defendant has
> acted unlawfully.  Where a complaint pleads facts that
> are "merely consistent with" a defendant's liability,
> it "stops short of the line between possibility and
> plausibility of 'entitlement to relief.' "

<u>Iqbal</u>,  129 S. Ct. at 1949 (citations omitted).

As noted in <u>Iqbal</u>, the Supreme Court has consistently

interpreted the Rule 12(b)(6) standard to require a district

court to "'accept as true all of the factual allegations

contained in the complaint . . . .'"  <u>Erickson</u>, 127 S. Ct. at

2200 (quoting <u>Twombly</u>, 127 S. Ct. at 1965); <u>see</u> <u>also</u> <u>South</u>

<u>Carolina Dept. of Health and Environmental Control v. Commerce</u>

<u>and Industry Ins. Co.</u>, 372 F.3d 245, 255 (4th Cir. 2004) (quoting

5

**Franks v. Ross**, 313 F.3d 184, 192 (4th Cir. 2002)).  The court is additionally required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ."  **Edwards v. City of Goldsboro**, 178 F.3d 231, 244 (4th Cir. 1999).

## II. The Federal Claims

**A. The Prison Defendants - Plaintiff's Allegations**

In the complaint (Doc. # 100), the plaintiff alleges that in March 2006 he was classified at Mount Olive at a level II minimum security custody level.  (Supp. to Original Complaint p. 20).  On April 19, 2006, he was reclassified by Kenneth Akins, Case Manager and Classification Committee Chair at the Huttonsville Correctional Center, as a level III close medium custody level based upon the information in the plaintiff's presentence investigation report indicating that he was a child sex offender.  (Id.).  The plaintiff was given the full program recommendations of sex offender treatment.  (Id.).

Thereafter, from April of 2006 to the time he filed this action on May 20, 2008, the plaintiff made numerous attempts to have his classification and program recommendations changed,

6

including filing appeals and grievances and writing letters to
various prison and state officials.  All of these attempts are
described by the plaintiff in his thirty-five page complaint.

On April 21, 2006, the plaintiff appealed his sex
offender classification status to William Haines, Warden at the
Huttonsville Correctional Center, contending that the information
contained in his presentence report regarding the age of his wife
(as being between fifteen and eighteen) when they first became
intimate was false and that he had never been charged with a
sexual offense.  (Id. at 21).  Warden Haines denied the
plaintiff's classification appeal on April 23, 2006.  (Id.).

On June 26, 2006, the plaintiff was transferred from
Huttonsville to St. Mary's Correctional Center.  (Id. at 23).  On
July 10, 2006, Joyce Bills, Institutional Parole Officer at St.
Mary's, provided the plaintiff with a summary of the
institutional record she intended to use at his July 13, 2006,
parole hearing.  (Id.).  According to the complaint:

> The aforementioned [summary] listed information from
> plaintiff's PSI [presentence report] indicating a (sic)
> inappropriate sexual relationship with his ex-wife, and
> records from the Criminal Identification Bureau (CIB)
> showing his previous criminal history.  Defendant Bills
> admitted that there were inaccurate data indicating a
> prior offense of Daytime Burglary, nevertheless, she
> explained that she did not have time to fix the data.
> Defendant Bills turned the false report over to the

7

parole board, who then denied plaintiff's parole.
(Id.).  The Parole Board also indicated that the plaintiff had
failed to provide a reentry program plan.  (Id.).  According to
the Parole Recommendation attached to the plaintiff's original
complaint, the Board considered the plaintiff's "record of
participation in educational, vocational, and therapeutic
programs recommended . . . by the prison staff" to be a neutral
factor in its decision.  (Id. at Exhibit T).

On July 26, 2006, the plaintiff received his first
classification report indicating that a GET I Sex Offender
Program was required before he could be released on parole.  (Id.
at 24).  The plaintiff appealed his sex offender classification
to Dan Kimble, Classification Director at St. Mary's, on August
2, 2006.  (Id.).  On August 14, 2006, William Fox, Warden at St.
Mary's, denied the plaintiff's classification appeal stating "By
the time the juvenile was 15 years old, you became intimate and
the juvenile did in fact file a complaint.  You were later
married then divorced and no charges filed."  (Id.).  The
plaintiff contends that this statement is false.  (Id.).

On April 5, 2007, the plaintiff was transferred from
St. Mary's to Mount Olive Correctional Complex Medical Unit.
(Id.).  He was reclassified by Tom Summerell, Case Supervisor at

8

Mount Olive, on April 11, 2007, and was again recommended for sex offender treatment.  (Id.).

The plaintiff was denied parole for a second time on July 2, 2007.  (Id. at 26).  According to the Parole Recommendation attached to the plaintiff's original complaint, the Board again considered the plaintiff's "record of participation in educational, vocational, and therapeutic programs recommended . . . by the prison staff" a neutral factor in its decision.  (Compl., Exhibit N).  The Board regarded the plaintiff's failure to comply with the recommendations made by the Parole Board during his previous interview, which according to the plaintiff included sex offender training, to be a negative factor in its decision.  (Id.).

The plaintiff instituted this action in federal court on May 20, 2008.  Thereafter, he appeared for a third time before the Parole Board on July 1, 2008.  (Compl., Unnumbered Exhibit). He was again denied parole.  (Id.).  The Board once again indicated that it considered the plaintiff's "record of participation in educational, vocational, and therapeutic programs recommended . . . by the prison staff" to be a neutral factor in its decision; but it deemed the plaintiff's failure to comply with the recommendations made by the Parole Board during

his previous interview to be an extremely negative factor.
(Id.).

B. The Prison Defendants - The § 1983 Claims

In the memorandum opinion and order, entered on March
27, 2009, the court found that the plaintiff, who has not been
convicted of a sex offense, has stated a claim based upon a
constitutionally protected liberty interest in not being
classified as a sex offender and in not being required to undergo
sex offender treatment, without due process of law.

The Prison Defendants contend that they are entitled to
qualified immunity for their classification of the plaintiff and
program recommendations.  Qualified immunity bars section 1983
actions against government officials in their individual
capacity.  Brandon v. Holt, 469 U.S. 464, 472-73 (1985).  Because
it is an immunity, and not merely a defense, it protects
government officials not only from liability, but also from the
burdens of trial and preparing for trial, and so it must be
addressed by the court at the earliest possible stage of the
litigation.  Hunter v. Bryant, 502 U.S. 224, 227 (1991); Mitchell
v. Forsyth, 472 U.S. 511, 526 (1985).  "[I]t is effectively lost

10

if a case is erroneously permitted to go to trial."  <u>Mitchell</u>,
472 U.S. at 526.

The test for qualified immunity is a two-pronged
inquiry.  The court must determine (1) whether a constitutional
right has been violated on the facts alleged and (2) whether the
right was clearly established at the time so that it would be
clear to an objectively reasonable officer that his conduct
violated that right.[2]  <u>Saucier v. Katz</u>, 533 U.S. 194, 200-02
(2001).  A right is clearly established if "[t]he contours of the
right [are] sufficiently clear that a reasonable official would
understand that what he is doing violates that right."  <u>Id.</u> at
202.

The Prison Defendants contend that they are entitled to
qualified immunity on the plaintiff's claim based on his
classification and program recommendations on the ground that the
liberty interest in being free from participation in a prison's
sex offender treatment program is not clearly established.  The
fundamental question is whether the state of the law gave the

---

[2] The Supreme Court has recently clarified that the prongs
of the qualified immunity test need not be addressed in a
particular order; courts may use discretion in deciding which of
the two prongs should be considered first in light of the
circumstances of the particular case at hand.  <u>Pearson v.
Callahan</u>, --- U.S. ----, 129 S. Ct. 808, 818 (2009).

11

Prison Defendants fair warning that their conduct was
unconstitutional or whether the Prison Defendants' conduct
violated clearly established laws of which a reasonable official
would have known.  See Hope v. Pelzer, 536 U.S. 730, 739-40 n.10
(2002).

As the court noted in its memorandum opinion and order
entered on March 27, 2009, "the question of whether there exists
a constitutionally protected liberty interest in being free from
participation in a prison's sexual offender treatment program is
a matter of first impression in the Fourth Circuit Court of
Appeals and in the Federal Courts in the states comprising the
Fourth Circuit."  The court, accordingly, looked to the law of
other circuits in holding that the plaintiff, who has never been
convicted of a sex offense, has stated a claim upon which relief
could be granted with respect to this liberty interest.  See
Coleman v. Dretke, 395 F.3d 216 (5th Cir. 2004); Chambers v.
Colorado Dep't of Corrections, 205 F.3d 1237 (10th Cir. 2000);
Kirby v. Siegelman, 195 F.3d 1285 (11th Cir. 1999); Neal v.
Shimoda, 131 F.3d 818, 830 (9th Cir. 1997).  Although each of the
four courts of appeal that have considered the question have held
that such a liberty interest exists, the contours of the right
vary among the circuits.  Indeed, the Fifth Circuit considered

the same four cases and concluded that prison officials were entitled to qualified immunity because "the lack of consistency among [the circuits'] rules makes 'the contours of the right' not 'sufficiently clear.'"  <u>Williams v. Ballard</u>, 466 F.3d 330, 333 (5th Cir. 2006).

The plaintiff construes the Prison Defendants' briefing on this issue as stating that the right in question cannot have been clearly established because of the novelty of the facts.  As the plaintiff notes, the United States Supreme Court has stated that officials can still be on notice that their conduct violates established law even in novel factual circumstances and that cases need not be "fundamentally similar" to place officials on notice.  <u>Hope</u>, 536 U.S. at 741.  The court, however, does not construe the Prison Defendants' briefing as relying on the novelty of the facts.

The plaintiff fails to identify binding precedent that would have placed the Prison Defendants on notice that their conduct was unconstitutional.  Only one case in his brief is relevant to his federal claim, namely, <u>Paul v. Davis</u>, 424 U.S. 693 (1976).³  In <u>Paul</u>, the plaintiff claimed that he was deprived

---

³ The plaintiff also cites to <u>Paine v. Baker</u>, 595 F.2d 197 (4th Cir. 1979), and <u>Tasker v. Mohn</u>, 165 W. Va. 55, 267 S.E.2d

of a liberty interest without due process when his name and photograph appeared on a flier under the heading "active shoplifters" that was distributed by police to local merchants. Paul, 424 U.S. at 695.  The plaintiff had been arrested and arraigned for shoplifting, but upon his plea of not guilty, "the charge had been 'filed away with leave (to reinstate),' a disposition which left the charge outstanding."  Id. at 695-96. The court held that damage to one's reputation, without more, does not implicate any liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause.  Id. at 708-11.  Rather, a plaintiff must show that he has been deprived of some other right or legal status previously held. Id.  In relation to the plaintiff's claim here, Paul is relevant insofar as it indicates that stigma or damage to one's reputation is not enough to implicate a liberty interest, but Paul would not provide any guidance to a correctional officer determining whether he was depriving an inmate of any right or legal status in imposing sex offender treatment program requirements on the

---

183 (1980), without stating whether he is addressing his federal claim or his state claims.  Inasmuch as both cases concern a liberty interest in parole release, which arises under the West Virginia State Constitution, see Tasker, but not the United States Constitution, see Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1 (1979), it seems that both of these cases are related to his state claim and neither is relevant to his federal claim.

**14**

inmate.

Inasmuch as the plaintiff has not shown that the liberty interest in being free from participation in sex offender treatment is clearly established, the court concludes that the Prison Defendants are entitled to qualified immunity on this claim and the plaintiff is not entitled to money damages from the Prison Defendants in their individual capacities.  The federal claims against the Prison Defendants are dismissed.

C. Rebecca Bostic - Plaintiff's Allegations

Rebecca Bostic was the probation officer in the plaintiff's underlying criminal action.  The plaintiff alleges in his complaint that Bostic placed "substantial false and negative information in Plaintiff's Pre-sentence Report, while omitting favorable information."  The court held in its March 27, 2009, memorandum opinion and order that Bostic is entitled to absolute quasi-judicial immunity for these claims which are based on her preparation and submission of the presentence report.

The plaintiff's only remaining claim against Bostic concerns an alleged communication between Bostic and prison officials in which she stated that she stands behind the veracity

15

of her report and mailed "a more thorough report" to a prison official to reinforce the program recommendations made by the plaintiff's unit team.  (Supp. to Original Complaint p. 15).  The plaintiff claims that her communication with the prison officials constituted a "deliberate fraudulent action."  (Id.).

     Bostic's communication with the director of classification is reflected in a letter sent by William S. Haines, then-warden at the Huttonsville Correctional Center, to Jim Rubenstein, commissioner for the division of corrections, on July 7, 2006.  This letter was apparently written after the plaintiff wrote a letter to Senator Rockefeller asserting that he was incorrectly classified.  In the July 7, 2006 letter, Warden Haines reports that the Huttonsville director of classification contacted Bostic for clarification on issues raised by the plaintiff in his letter to the Senator.  The director relayed to Haines that Bostic "stands behind the veracity of her report" and mailed a more thorough report to the director, which included police reports, photographs, family court papers, letters written by the plaintiff to his ex-wife, "and various other miscellaneous documents, which reinforce the program recommendations made by Gilmore's Unit Team."  Based upon the review conducted by the director of classification, Haines assured Rubenstein that the

plaintiff has been classified appropriately with the information available to the classification team.

As the court noted in its March 27, 2009, memorandum opinion and order, the subject matter of Bostic's communications with the prison officials is not clear from the allegations in the complaint, and the court could not conclude from the facts alleged whether the communication would fall within the scope of her protected judicial role for which she would be entitled to absolute immunity.  The court observed, however, that to the extent that it may later be determined that the communications related to matters that were covered by the presentence investigation report, the communications may be protected.

B. Rebecca Bostic - The § 1983 Claims

The plaintiff's allegations against Bostic fail to state a claim upon which relief can be granted.  Even when read liberally in favor of the plaintiff, who filed his complaint while still proceeding pro se, the allegations do not amount to a constitutional tort.  Section 1983 authorizes liability only against a defendant who "subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights" guaranteed by the

17

Constitution or federal law.  42 U.S.C. § 1983.  The United States Supreme Court has interpreted this language as imposing a proximate cause requirement on § 1983 claims.  See Martinez v. California, 444 U.S. 277, 284-85 (1980) (holding that girl's death caused by parolee five months after his release was "too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law.").  Numerous circuit courts, including the Fourth Circuit, have held that the causal link in § 1983 cases is analogous to common law proximate cause.  See, e.g., Shaw v. Stroud, 13 F.3d 791, 800 (4th Cir. 1994).  A defendant can be held liable only for the natural and foreseeable consequences of his actions.  Id.

The plaintiff does not allege that the communication between Bostic and the Prison Defendants caused him any injury. Indeed, he was classified as a sex offender by the Prison Defendants before the communication occurred, and the purpose of the communication was to verify that his classification was correct.

Moreover, even if the plaintiff had alleged causation, his claim against Bostic would be dismissed on other grounds. His claim against Bostic in her individual capacity should be dismissed on the basis of qualified immunity because, as Bostic

18

notes in her motion, there is a paucity of caselaw with regard to whether communication between a probation officer and prison officials would constitute a violation of a prisoner's constitutional rights.  Moreover, Bostic has identified a case in which the Third Circuit observed that extra-judicial communications between a probation officer and prison officials are permissible.  See United States v. Katzin, 824 F.2d 234 (3d Cir. 1987).  Accordingly, the plaintiff's rights were not clearly established such that a reasonable officer would understand that her conduct was unlawful in the situation she confronted.

Additionally, the plaintiff's claim for damages against Bostic in her official capacity must be dismissed on the ground that she is entitled to Eleventh Amendment immunity.  The Eleventh Amendment provides "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  It is well established that the Eleventh Amendment bars suits against state officials in their official capacity for the recovery of money from the state even though the state is not named as a party to an action.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Edelman v. Jordan,

19

415 U.S. 651, 663 (1974).  "[A] suit against a state official in
his or her official capacity is not a suit against the official
but rather is a suit against the official's office," and "[a]s
such, it is no different from a suit against the State itself."
Will, 491 U.S. at 71.  The plaintiff concedes in his response
that he cannot seek money damages from Bostic in her official
capacity inasmuch as any judgment rendered against her would be
paid by the state.

        The plaintiff's claim for injunctive and declaratory
relief against Bostic in her official capacity must be dismissed
for a different reason, namely, there is no actual case or
controversy between the plaintiff and Bostic.  Generally,
declaratory judgment is only appropriate when it would "serve a
useful purpose in clarifying and settling the legal relations in
issue" to guide the parties in the future.  Dunn Computer Corp.
v. Loudcloud, Inc., 133 F. Supp. 2d 823, 829-30 (E.D. Va. 2001)
(quoting Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d
419, 422 (4th Cir. 1998)).  The plaintiff alleges only past
conduct by Bostic, not continuing conduct or an immediate threat
of injury.  Bostic, as a probation officer, lacks any authority
to provide the plaintiff with any relief relating to his
classification, parole, or any other conditions of his

incarceration.  Accordingly, the plaintiff cannot seek prospective relief against Bostic.  The federal claims against Rebecca Bostic are dismissed.

### III. The State Claims

In the memorandum opinion and order, entered on March 27, 2009, the court found that the plaintiff has stated a claim under the West Virginia State Constitution based upon a constitutionally protected liberty interest in not being classified as a sex offender where he has not been convicted of a sex offense and, in such case, in not being required to undergo sex offender treatment, without due process of law.  This claim is based upon the liberty interest in parole release arising under the Due Process Clause of the West Virginia Constitution, as recognized by the West Virginia Supreme Court in Tasker v. Mohn, 651 W. Va. 55, 267 S.E.2d 183 (1980).  It would seem to apply to the extent the plaintiff has been denied parole because of his refusal to participate in the treatment.  The court also found that the plaintiff stated a claim of state constitutional magnitude based upon the Prison Defendants' alleged failure to expunge or correct inaccuracies in the plaintiff's prison file, which may have resulted in the plaintiff being denied parole.

The Prison Defendants contend that they are entitled to
qualified immunity for each of these claims, citing State v.
Chase Securities, Inc., 188 W. Va. 356, 424 S.E.2d 591 (1992).
There, the West Virginia Supreme Court expanded the doctrine of
qualified immunity beyond § 1983 cases, stating that "it is
obvious that an immunity standard for a public official needs to
encompass all types of public official liability, not just the
range of cases covered by Section 1983 suits." Id. at 599.  The
court held that a public executive official who is acting within
the scope of his authority and is not covered by the West
Virginia Government Tort Claims and Insurance Reform Act, West
Virginia Code § 29-12A-1 et seq., is entitled to qualified
immunity from personal liability for official acts if the
involved conduct did not violate clearly established laws of
which a reasonable official would have known.  Id. at 599-600.
The plaintiff disputes the applicability of Chase Securities to
his state claims.

The exact parameters of the state constitutional claims
and the determination of the extent to which qualified immunity
under state law would bar them is best left to the state courts
of West Virginia.  Additionally, it is noted that all of the

22

federal claims against all of the defendants are dismissed except for the three defendants known as the Mental Health Unit Defendants at Mount Olive who have chosen not to file a similar motion to dismiss but expect to file a motion for summary judgment.

Title 28 U.S.C. § 1367(c) governs the discretionary declination of supplemental jurisdiction.  Section 1367(c) provides pertinently as follows:

(c) The district courts may decline to exercise supplemental jurisdiction . . . if--

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are

other compelling reasons for declining

jurisdiction.


_Id._; _Raygor v. Regents of University of Minnesota_, 534 U.S. 533,

540 (2002)("Subsection (c) allows district courts to decline to

exercise supplemental jurisdiction in certain situations, such as

when a 'claim raises a novel or complex issue of State law.'").

The Supreme Court in _City of Chicago v. Int'l Coll. Of

Surgeons_, 522 U.S. 156 (1997), recognized that in exercising

their discretion under § 1367(c), district courts may consider

factors including "the circumstances of the particular case, the

nature of the state law claims, the character of the governing

state law, and the relationship between the state and federal

claims"  as well as the overarching values of "judicial economy,

convenience, fairness, and comity . . . .".  _Id._ at 173; _see also_

_Carnegie-Mellon University v. Cohill_, 484 U.S. 343, 350 (1988).

In _United Mine Workers of America v. Gibbs_, 383 U.S.

715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), which predated

the enactment of section 1367, the Supreme Court cautioned that

"[n]eedless decisions of state law should be avoided both as a

matter of comity and to promote justice between the parties, by

procuring for them a surer-footed reading of applicable law."
Id.  Our court of appeals has read Gibbs as recognizing "the
desirability of having state courts interpret questions of state
law" and also noted that absent a strong federal interest, the
federal court "should not elbow its way into this controversy to
render what may be an 'uncertain and ephemeral' interpretation of
state law."  Mitcheson v. Harris, 955 F.2d 235, 238 (4th
Cir.1992); see also Hinson v. Norwest Fin. S.C., Inc., 239 F.3d
611, 617 (4th Cir.2001) ("under the authority of 28 U.S.C. §
1367(c), authorizing a federal court to decline to exercise
supplemental jurisdiction, a district court has inherent power to
dismiss the case or, in cases removed from state court, to
remand, provided the conditions set forth in § 1367(c) for
declining to exercise supplemental jurisdiction have been met.").

        The state constitutional claims and the application of
state qualified immunity raise novel and complex issues under
state law.  § 1367(c)(1).  Those issues substantially predominate
over the federal claims against the three remaining Mental Health
Unit defendants yet to be heard on pretrial motion.  §
1367(c)(2).  All other federal claims have been dismissed.  §
1367(c)(3).  Application of § 1367(c)(1) and § 1367(c)(2) weigh
substantially in favor of this court declining to exercise

supplemental jurisdiction over the state law claims.


### V. Mental Health Unit Defendants


These three defendants have yet to file a motion
similar to those dealt with herein.  Inasmuch as the state claims
against all the original defendants tend to overlap, the court
finds it appropriate to decline to exercise supplemental
jurisdiction over the state claims against the Mental Health Unit
Defendants.


### VI. Conclusion


Based upon the foregoing, the court concludes that the
Prison Defendants are entitled to qualified immunity on the
plaintiff's federal claims against them.  It is, accordingly,
ORDERED that the Prison Defendants' motion be, and it hereby is,
granted as to the portion of the plaintiff's complaint asserting
42 U.S.C. § 1983 claims.

The court further concludes that the plaintiff's claims
against Rebecca Bostic should be dismissed on the ground that the
plaintiff has failed to state a claim upon which relief can be

granted, and alternatively, because Bostic is entitled to qualified immunity and the benefit of Eleventh Amendment immunity and there is no actual case or controversy between the plaintiff and Bostic.  And so, it is further ORDERED that Rebecca Bostic's motion be, and it hereby is, granted, and that Bostic be dismissed from this action.

Inasmuch as the predicate for federal jurisdiction has been dismissed as to the Huttonsville Correctional Center defendants, the St. Mary's Correctional Center defendants, the Mt. Olive Correctional Complex defendants, and the Division of Corrections defendants, and Rebecca Bostic, the court declines to exercise supplemental jurisdiction over the claims arising under the West Virginia State Constitution against these defendants and the remaining three Mental Health Unit defendants.  It is accordingly ORDERED that those state claims be, and they hereby are, dismissed without prejudice.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: September 22, 2009

John T. Copenhaver, Jr.
United States District Judge

27